THE STATE OF NORTH DAKOTA, EX REL., FARMERS STATE BANK OF PAGE, a domestic corporation and FARMERS STATE BANK OF PAGE, a domestic corporation individually, Petitioner v. GEORGE E. WALLACE, as Tax Commissioner of the State of North Dakota, F. C. EDDY as Treasurer of Cass County, North Dakota and FRED A. KRAEMER, as Sheriff of Cass County, North Dakota, Respondents.

(187 N. W. 728)

**Statutes — where words are plain and unambiguous, the statute is not subject to construction.**

1. Where plain and unambiguous words are used in a statute the statute is not rendered subject to construction, especially where the words have long been employed in similar legislation in their ordinary sense and where the attempt to find a different meaning requires a resort to speculation.

**Statutes — where the same words used in concurrent legislation resorted to are not inconsistent with their ordinary meaning, use in a qualified sense cannot be ascribed thereto.**

2. Where concurrent legislation is resorted to in an effort to show that ordinary words were used in a qualified sense, the limited meaning will not be ascribed to the legislature where the concurrent legislation is not inconsistent with the ordinary meaning of the words in question.

**Constitutional law — statutes should be construed to make them constitutional if possible.**

3. Statutes should be construed, if possible, so as to be constitutional in their operation and if, where ordinary words are given their ordinary meaning, the statute may operate constitutionally whereas, if given a restricted meaning, it would operate unconstitutionally as to a portion of the subject matter affected, it must be *held* that the legislature intended the ordinary meaning to attach.

**Constitutional law — courts not concerned with legislative policy.**

4. Courts are not concerned with the policy reflected in legislation or with the motives of the legislature.

**Taxation — "bonds" and "stocks" as used in tax law held to include all bonds and stocks which would otherwise be subject to taxation.**

    5. Chap. 230 of the Session Laws of 1917, which provides for a uniform tax of three mills on the dollar upon moneys and credits "including bonds and stocks" and exempts the property embraced from other taxation, is construed and it is *held* that the term "bonds and stocks" includes all bonds and stocks which would otherwise be subject to taxation in some other form.

**Taxation — statutes construed as exempt, and all bank stocks and bonds from taxation other than that provided in act.**

    6. Chap. 62 of the Laws of the Special Session of 1919, which repeals Chap. 230 of the Session Laws of 1917 and which affirmatively exempts moneys and credits "including bonds and stocks" from taxation— exempting from the exemption income derived therefrom and providing that "stocks and bonds" shall remain subject to a capital stock tax—, is construed and it is held to exempt all stocks and bonds from taxation other than that provided for in the Act.

Opinion filed Feb. 21, 1922

Original application for injunction.    Writ granted.

*Engerud, Divet, Holt & Frame,* and *R. C. Morton,* for petitioners.

*George E. Wallace,* for respondents.

BIRDZELL, J.    This is an action instituted in this court for the purpose of obtaining relief against certain taxes for the years 1920 and 1921, assessed against the shares of stock of banks.    Equitable grounds for such relief are set forth in the complaint, provided the plaintiffs' contentions based upon the law applicable to the taxation of such property are well founded.    The contention is that, since the passage of chap. 62 of the Laws of the Special Session of the Legislature for 1919, bank stock is not subject to taxation in the manner attempted, but that it comes under the exemption accorded to credits generally, being included in "bonds and stocks" which are expressly declared to be exempt. It is conceded, however, that banking corporations are subject to the tax provided by chap. 222 of the Laws of 1919 (a capital stock tax), and to taxation upon their personal and real property, other than credits to the same extent as other individuals and corporations.    The contentions center about the construction of chap. 62 of the Laws of the Special

Session for 1919, in connection with other tax legislation—principally chap. 230 of the Session Laws of 1917. For convenience in following the discussion of the main features of the legislation in question, the various acts will be referred to in terms descriptive of their subject-matter, with the necessary references in parentheses, and to facilitate a ready understanding of the matter in controversy it is deemed proper to make a brief general historical statement in the margin showing the methods employed at various times and the results achieved in the taxation of corporate stock and moneys and credits generally.

Under the Constitution as it stood prior to an amendment adopted in 1914 (article 20; see Laws 1915, p. 404), all property was required to be assessed and taxed uniformly according to its value (§ 176). This included property of every description, though of course it did not require double taxation of credits, so creditors have been allowed, at times, to deduct their bona fide indebtedness from their credits (chap. 132, Session Laws of 1890), and moneys and credits belonging to banks have uniformly been exempted from taxation, though the stock has always been taxable to the holders at the place where the bank is located (Session Laws of 1890, chap. 132, §§ 2, 16 and 24; §§ 2075, 2103, ¶ 19 and 20, Compiled Laws of 1913). Individual owners of stocks in banks or other corporations (domestic) required to report were not required to list such stock. § 2102, Compiled Laws of 1913. As a consequence bank stock was listed to the stockholder by the accounting officer of the bank, other domestic corporations were taxed upon their property the same as individuals, and the stockholders were not taxed on the shares. If it was found that an excess value attached to the stock, above the value of the taxable property, it was taxed to the corporation, or, if not, at least theoretically it should have been, as "bonds or stocks." Section 2110, Compiled Laws of 1913. Such a valuation was listed under an item (¶ 23, § 2103) set apart for the value of the shares of capital stock. While the law was in this condition moneys and intangible property practically ceased to be an actual subject of taxation in the state (First Report, N. D. Tax Commission 1912, chap. 4), the aggregate amount of money and credits listed for the entire state being about three-fourths of a million dollars. When the Constitution was so amended as to permit property to be classified for taxation, the Legislature immediately sought to subject moneys and credits to a tax that could be applied in practice. It adopted such a measure in 1915, but the

act proved to be invalid. State ex rel. Linde v. Packard, 32 N. D. 301, 155 N. W. 666. It repeated the attempt in 1917, only to retrace its steps later, and specifically repeal this law in 1919 at the special session. As showing, however, the extent to which moneys and credits had evaded taxation before the change in the law, it is significant that under the 1917 act over $100,000,000 of moneys and credits were rendered subject to taxation at the 3-mill rate (Report, N. D. Tax Commission 1919, chap. 8).

During the period prior to the attempted classification of moneys and credits for the purpose of levying the 3-mill tax, "bonds and stocks," both of domestic and foreign corporations, other than bank stock, were practically not taxed at all; the valuation of these items for the entire state being less than $75,000. See Report of the Tax Commission for 1912, p. 186.

The 1917 Money and Credits Law (chap. 230) provides (§ 1):

" 'Money' and 'credits' as the same are defined in § 2074 of the Compiled Laws of 1913, *including bonds and stocks,* are hereby exempted from taxation other than that imposed by this act, and shall hereafter be subject to an annual tax of three mills on each dollar of the fair cash value thereof. But nothing in this act shall apply to money or credits belonging to incorporated banks or building and loan associations situated in this state, nor to any indebtedness on which the tax is paid under a mortgage registration act, or is exempted by statute." (Italics are ours.)

The act of the Special Session of 1919 (chap. 62, Laws of the Special Session), which expressly repeals the chapter of which the foregoing is a part, reads in part as follows (§ 1):

"Money and credits, as the same are defined in § 2074 of the Compiled Laws of North Dakota for the year 1913, *including bonds and stocks,* are hereby exempted from taxation; provided, however, that the income therefrom except as to income derived from loans on North Dakota real property shall be taxable under the provisions of chap. 224 of the laws of North Dakota for the year 1919 except as therein exempted; provided, further, that stocks and bonds shall be subject to taxation in the manner provided by chap. 222 of the Laws of North Dakota for the year 1919. Provided that nothing in this act contained shall affect the validity of any tax upon transfers of property by will, gift, or in-

testate law, under the provisions of chap. 225, Laws of North Dakota, 1919." (Italics are ours.)

The complaint alleges that notwithstanding the passage of the foregoing laws, the taxing officers have continued to tax bank stock according to the rate of levy prevailing in the district where the bank is situated. The contention in support of the practice complained of is that bank stock was not exempted from other taxation under the money and credits statute of 1917, and was not rendered subject to the tax therein imposed; that the term "bonds and stocks" used in the definition of moneys and credits for the purpose of applying that law does not mean bonds and stocks generally, but certain kinds of bonds and stocks, excluding bank stock from the category; in short that the term was used in a special sense not embracing bank stock at all, and that again in 1919, when the special session repealed the money and credits tax, it used the terms "bonds and stocks" in the same sense, and therefore did not include bank stock within the exemption from taxation therein granted.

The term "bonds and stocks" is an ordinary term easily capable of comparatively accurate definition. To the mind of the layman and lawyer alike it clearly embraces bonds and stocks of every sort that represents a money investment. It is as applicable to corporate stocks of one kind as to any other. There is no indication of a legislative intention to limit the meaning so as to make it applicable to certain stocks only, nor does the other legislation enacted concurrently with it point to its use in any limited sense. And, if it were used in a limited sense, there is no guide to its true meaning by which it could be ascertained what stocks would be included and what would not. It is only by sheer speculation it can be said that bank stock was not exempted from taxation at the local rate of levy by the Money and Credits Act of 1917, and the uncertainty of such construction is even greater with respect to the repeal act of the 1919 special session.

A few observations relative to the condition of the tax law applicable to stocks and bonds at the time of the passage of the Money and Credits Act in 1917 will demonstrate the truth of the foregoing statement. § 2102, C. L. 1913, says:

"No person shall be required to include in his statement any share or portion of the capital stock or property of any company or corporation which such company or corporation is required to list or return as its capital or property for taxation in this state."

Section 2094 requires the listing of the property of a corporation by the president, agent, or officer thereof. Section 2110 requires the listing of the paid-up capital, and also prescribes a method for arriving at any excess value attaching to it above its taxable property, and for listing it as "bonds or stocks" under subdivision 23 of § 2103. Clearly this section is only applicable to domestic corporations, since that is the extent of the taxing jurisdiction of the state with reference to this species of property. These statutory provisions clearly require the property of corporations generally to be listed and taxed the same as that of individuals, and, to avoid double taxation, they relieve individuals from returning their shares in corporations so taxed. But in the case of banks the stock is listed in the name of the individual owner (§ 2115) in harmony with the requirements of the National Banking Act (13 Stat. 99), as will be noted more particularly later. These provisions are not applicable to stock in foreign corporations, which must, of course, be listed by the owner. Section 2103 which specifies the items of the assessment list carries out the plan of the foregoing substantive requirements in the following paragraphs.

"19. The amount of moneys other than of banks, bankers, brokers or stock jobbers.

"20. The amount of credits other than of banks, bankers, brokers and stock jobbers.

"21. The amount and value of bonds and stocks, other than bank stock.

"22. The number of shares of bank stock and the value thereof.

"23. The amount and value of shares of capital stock of companies and associations not incorporated by the laws of the state."

By way of emphasis we repeat that under § 2110, corporate excess of domestic corporations is required to be listed under item 23, quoted above, which item would otherwise normally contain only the shares of stock owned by individuals in foreign corporations. This was the condition of the law at the time of the adoption of the Money and Credits Act of 1917 (Laws 1917, chap. 230), and it is only in the light of the pre-existing laws that it can be properly construed. Now this act, consistent with ¶ 19 and 20 quoted above (see, also, § 2075), excepts the moneys and credits of banks from the imposition of the mill tax but it exempts money and credits generally, "including bonds and stocks," from all other taxes than the mill tax thereby imposed, and repeals all

_ther legislation in so far as in conflict with the provisions (§ 14). Clearly a share of stock in a foreign corporation, owned by a resident, and the corporate excess of a domestic corporation were thus rendered subject to the mill tax, and exempted from other taxes. Thus a resident of this state owning shares of stock in a state bank in Minnesota or in any other foreign corporation, was taxable on such stock at the rate of three mills on the dollar of its valuation, whereas formerly he was taxable on account of such stock according to the rate of levy in the taxing district of his domicile. So, beyond the peradventure of a doubt, through the definition employed in the Money and Credits Act, considered in its relation to the existing legislation, money and credits included "bonds and stocks" owned by individuals; also the corporate excess of domestic corporations; and after its passage it is certain that no resident of the state could have been lawfully taxed on stock owned in foreign corporations, including banks, at any greater rate than three mills on the dollar, whereas formerly he was taxable according to the local levy.

The sections of the statute (§§ 2110 and 2115), one of which provides a method for arriving at the corporate excess of corporations generally, and the other for computing the value of bank stock, do not, in our opinion, have any bearing upon the question of the taxability or exemption of the stocks referred to in either section under a general description of stocks. These sections never existed for the purpose of differentiating between the kinds of stocks, and subjecting each to a different share of the tax burden. They merely subserved official convenience in valuing and equalizing properties of the same general species to the end that each might in the end be subjected to its full, uniform legal burden as required by the Constitution before its amendment. They were aids to a complete and full assessment; not vehicles for discrimination. Hence, since the term "bonds and stocks" as used in the Money and Credits Act refers just as appropriately to the valuation reached by applying one section as it does to that reached by applying the other, we can see no basis for saying that it included one and excluded the other.

An examination of the legislation passed concurrently with this 1917 act does not disclose an intention to exclude bank stock from its operation. Chap. 61 of the Laws of 1917, approved on the same day as the Money and Credits Act, amended the statute governing the assessment

of bank stock, but only in respect to the method of arriving at its value for tax purposes. Obviously the moneys and credits tax is an ad valorem tax, and it is as important to arrive at the value for purposes of levying the 3-mill tax as for subjecting the property to a tax levied according to the local rate. So there is no inconsistency between chap. 61 and the Money and Credits Act.

Chap. 59 of the laws of the same session, which was also approved on the same day, provides a classification scheme by virtue of which bank stock falls in the class subjected to the highest valuation. Class 1 reads in part:

"All land, town and city lots, railroads, bank stock, express and telegraph property, shall constitute class one," etc.

And in providing for class 3 we find this language:

"All household goods, and house equipment and wearing apparel, structures and improvements upon farm land, stocks other than banks, bonds, money and credits, provided that such stocks, bonds, money and credits are not otherwise assessed under a mill or flat rate law, shall constitute class three," etc.

Clearly the Legislature was impressed with the desirability of distinguishing between bank stock and other stocks for purposes of classifying property for taxation, and, to make the distinction effective, it spoke of bank stock alone in one place and of "stocks other than banks" in another. Similarly the distinction has always been made in the listing law, previously quoted in this opinion, showing that, where bonds and stocks generally were listed, bank stock would be included were it not for the expression "bonds and stocks, other than bank stock," ¶ 21, § 2103, C. L. 1913. Not only throughout the history of tax legislation have appropriate words been used to exclude bank stock from bonds and stocks generally where that term has been employed, but indeed in the very session of the legislature which passed the Money and Credits Act the same distinction was made for classification purposes—only to be ignored, however, in levying the mill tax. While it may be true that this section discloses an intention to tax bank stock according to a higher rate of valuation than other stocks, it affords conclusive proof that the legislature was familiar with the terminology employed in the Money and Credits Act, and we cannot with propriety speculate as to why it failed to make the exception as it had always done before. From the fact that the exception was not made it must be inferred that it was

thought desirable to treat bank stock at parity with all other stock for purposes of this tax.

It is not the duty of this court to legislate nor to search for a hidden meaning of plain and hithero unambiguous words employed by the legislature. We are not free to enter into the realm of speculation. Clearly the expression "bonds and stocks" employed in the Money and Credits Act included stocks, and was intended to include stocks, of the very character of those in question here. Had it been desired to limit its application so that it would not embrace a distinct class of stocks of the same character as those unquestionably included, such intention could readily have been expressed as it formerly had been. The duty of the court ends when it determines the legal meaning of the words employed. If the words are not ambiguous there is no room for construction.

"This is so, even though the statute so understood 'leads to absurd and mischievous results * * * ; for courts are not to inquire as to the motive of the legislature, nor to depart from a meaning clearly conveyed in unambiguous words, because the statute, as literally understood, appears to lead to unwise consequences or to contravene public policy.' 26 Am. Eng. Ency. of Law 599." State ex rel. Linde v. Taylor, 33 N. D. 76, 98, 156 N. W. 561, 569 (L. R. A. 1918B, 156, Am. Cas. 1918A, 583).

Though the court may find a particular statute offensive to its sense of justice in public affairs, it is powerless to relieve against the consequences if the act were enacted in pursuance of constitutional authority. We are aware of no rule of statutory construction that would justify an effort to except bank stock from the operation of the money and credits statute of 1917.

If construction might be legitimately resorted to in this case, however, we are of the opinion that it would point to the use of the term "bonds and stocks" in its general signification rather than to any possible limited meaning, such as is contended for by the defendants here. There is, perhaps, no rule of construction that equals in potency that which requires an act to be construed, where possible, so as to make it constitutional in its operation. The actual meaning of the legislature is perhaps more often sacrificed to a presumed constitutional meaning at variance with it through the application of this rule of construction than in any other way. Thus this court has held that a statute purporting to extend the period of redemption from mortgage foreclosure was not applicable to existing mortgages and contracts where to have construed

it as applicable would have rendered it unconstitutional as impairing the obligation of contracts (Lander v. Deemy, N. D. 176 N. W. 922). This principle or rule of construction is necessarily involved here, since the taxes on national bank stock are affected. The power of the state to tax the stock in national banks is derivative. A national bank, being created by the federal government, may not be taxed on its franchise nor the stockholder taxed on his stock by the states, except as permitted by Congress. McCulloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579; Osborn v Bank, 9 Wheat. 738, 6 L. ed. 204; Weston v. Charleston, 2 Pet. 449, 7 L. ed. 481; People of the State of New York v. Weaver, 100 U. S. 539, 25 L. ed. 705; Owensboro National Bank v. Owensboro, 173 U. S. 666, 19 Sup. Ct. 537, 43 L. ed. 850. Congress has given such consent by providing that the stock may be taxed to the stockholders subject to two restrictions, viz.:

"That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere." R. S. § 5219; U. S. Comp. St. § 9784.

Under this act of Congress national bank stock may not be taxed according to the local rate of levy while other moneyed capital invested in forms of securities generally denominated as credits is taxed in the same locality at a flat rate much less than the rate applicable to such national bank stock. Boyer v. Boyer, 113 U. S. 689, 5 Sup. Ct. 706, 28 L. ed. 1089; Evansville National Bank v. Britton, 105 U. S. 322, 26 L. ed. 1053; Merchants' National Bank v. City of Richmond, 256 U. S. 635, 41 Sup. Ct. 619, 65 L. ed. 1135. Therefore, if it be assumed that the legislature intended to exclude stock of national banks, along with state banks, from the operation of the Money and Credits Act of 1917, and to continue taxing such stock at the local rate of levy, the statute would be unconstitutional as taxing the stock of national banks beyond the authority granted. Of course it cannot be contended that the legislature contemplated taxing national bank stock as a credit at 3 mills on the dollar and state bank stock at the local rate. The decisions of the United States Supreme Court are controlling upon the federal question presented by such tax legislation (Des Moines National Bank et al. v. City of Des Moines, 153 Iowa, 336, 133 N. W. 767), and it is the duty of state courts to so construe acts of the legislature, if possible,

as to make them harmonize with the act of Congress dealing with the same subject as construed by the federal courts. First National Bank of St. Joseph v. St. Joseph, 46 Mich. 526, 9 N. W. 838. It follows that, in the light of the decisions of the United States Supreme Court construing the act of Congress with reference to the taxation of national bank stock, the Money and Credits Act of 1917 must be held to have embraced the stock of national banks as a credit; otherwise such stock would have been entirely exempted from taxation.

Even if it be assumed that the Money and Credits Act of 1917 might properly be construed, in connection with the concurrent legislation, as excluding bank stock from its operation, still it is manifest beyond a doubt that the repeal act of the special session of 1919, which contains affirmative language of exemption, cannot possibly be so construed as to render bank stock liable to taxation at the local rate, while credits and stocks generally are not so liable. The repeal act says affirmatively that moneys and credits, "including bonds and stocks," are "hereby exempted" from taxation; but it is provided that the income therefrom shall be taxable, and that "stocks and bonds" shall be subject to taxation in the manner provided by chap. 222 of the Laws of 1919 (the capital stock tax). The term "bonds and stocks" as used in this act clearly embraces, by its express language, stocks from which income may be derived, and such as may be subject to the capital stock tax under chap. 222 of the Laws of 1919. This gives it a broader meaning than mere "corporate excess"listed as "bonds or stocks" under subdivision 23 of § 2103, for such property is neither "capital stock" nor income producing. The Income Tax Law (chap. 224, Laws of 1919) apparently taxes the individual upon income derived from bank stock, and state banks are liable for the capital stock tax to the same extent as other corporations. Hence bank stocks are within the class to which the taxes that were saved out of the exemption are applicable. There was no occasion to save these enumerated taxes unless it was conceived that the exemption of "bonds and stocks" in the fore part of the act would have rendered bonds and stocks generally immune from all taxes. Clearly the term "bonds and stocks" was used in this act in its ordinary sense, and there is not the slightest ground for implying an exception of bank stock. Where the legislature has spoken thus clearly it would be nothing short of judicial legislation for us to write the exception into the statute. Prior to the passage of this act (chap. 62 of the Laws of the Special Ses-

sion of 1919) the legislature had authority to exempt personal property from taxation if it so desired (article 29, Amendments to the Constitution; see Laws 1919, p. 507).

Here again we might observe that the legislature could not, by reason of the federal constitution and the Act of Congress relative to the taxing of national bank stocks, exempt moneys and credits generally from taxation, and continue to subject national bank stock to taxation at the local rate of levy or at any rate differing from that applicable to other moneyed capital. It is not probable that the legislature would relinquish altogether the tax on national bank stock while continuing to tax that of state banks at the local rate. On the contrary, whatever reasons were potent enough to cause it to exempt "moneys and credits, including bonds and stocks," which of necessity embraced the stock of national banks, would naturally operate likewise favorably upon that of competing state banks. This impels us to the conclusion that the legislature has in fact exempted all stock, including bank stock, from all taxation, except that expressly retained by chap. 62 of the Laws of the Special Session of 1919. It follows that the complaint states a cause of action, and that the·writ should issue as prayed for.

Robinson, J., and Nuessle and Berry, District Judges, concur.

Christianson and Bronson, JJ., disqualified.

Grace, C. J. (dissenting). This is a proceeding where the original jurisdiction of this court has been invoked on the ground that the matters involved and presented for decision are of real and great public interest, affecting the state materially in its sovereignty and prerogatives. The object of the proceeding is to procure this court, on final hearing of the matters involved, to exercise its original jurisdiction and permanently enjoin the collection of or the attempt to collect certain taxes assessed and levied against certain specific property hereinafter mentioned. This court in the first instance issued an appropriate writ, which was duly served upon the defendants, directing them to show cause why they should not be temporarily prohibited and enjoined from taking any further proceedings for the collection of the tax, and why, upon final hearing, they should not be permanently enjoined from collecting or at-

tempting to collect the tax. The question of whether this court should take jurisdiction will be considered later in this opinion.

The petition is far too lengthy to be here set out. The material and necessary facts therein stated will, however, be mentioned, and are in substance as follows: That there are in the state of North Dakota more than 700 state banking associations, several of which are located in each of the several counties of the state, and in several different taxing divisions of each of the counties, and that said banking associations have a large number of individual stockholders aggregating more than 10,000; that 300 or more of such banking associations have refused to pay the tax assessed against their shares of stock for the year 1920; that their stockholders have likewise refused; that about 300 of such banking associations have paid, under protest, the taxes assessed against their shares of stock for the year 1920, and are claiming and asserting the right to recover back the amounts so paid; that plaintiff and its stockholders refused to pay the tax; in addition to the banks, there are approximately 20 trust companies organized and existing under and by virtue of chap. 31 of the Compiled Laws of North Dakota which have a large number of individual stockholders, which have assumed the same attitude toward the collection of the tax as that of the banking associations, viz. a refusal to pay it or have paid it under protest. The petition further shows that the banking associations and trust companies refusing to pay the tax, or those paying it under protest, base their refusal and protest on the contention that chap. 62 of the Laws of the Special Session of 1919 exempted all their stock from taxation, and that their stockholders make a similar claim.

The plaintiff asserts its willingness to pay the capital stock or franchise tax provided by chap. 222 of the Laws of 1919, but also asserts that the taxing officers of the counties and state do not recognize that the tax provided for in that chapter is applicable to the plaintiff. Plaintiff further shows its willingness to be assessed and taxed for the year 1920 for certain personal property in the form of furniture and banking fixtures, but that no tax appears on the records of the county of Cass against said property or the plaintiff. It further appears that the aggregate amount of all taxes for the year 1920 against bank and trust company stock is about $500,000, about one-half of which was paid under protest, and one-half has not been paid, and the validity thereof is in controversy. It further appears from the petition that the taxes as-

sessed and to be levied and charged against shares of stock of state banks and trust companies within the state for the year 1921 will be more than $600,000, 25 per cent. of which will be paid under protest, and the payment of 75 per cent. thereof will be resisted.

The petition further shows that the capital stock of the plaintiff's bank is $10,000; that during the month of April, 1920, while chap. 62 of the Laws of the Special Session of the Legislature for 1919 was in force and effect, the duly and legally qualified and acting taxing authorities of the village of Page, county of Cass, state of North Dakota, and George E. Wallace, as tax commissioner, claimed and asserted that the shares of capital stock of the plaintiff were subject to assessment for the purpose of taxation, and, acting under color of the law for the taxation of shares of bank stock as contained in § 2115 of the Compiled Laws, they demanded that plaintiff make return and furnish a statement to the assessor accordingly; that the plaintiff thereupon, through its proper officers, did make such statement and return, disclosing and showing the value of its shares of stock on the 1st day of April, 1920; that such statement showed the amount and number of its shares of capital stock, the amount of surplus, reserve fund, and undivided profits in excess of the amount equal to 5 per cent. of the loans and discounts of the bank, and the amount of its net investment in real estate, and which showed that the amount of the capital stock was $10,000, and the surplus and undivided profits $21,066.65, and that it had no real estate; it further showed a list of the plaintiff's stockholders; that, acting upon the statement and return other information, the assessing officers assessed and returned against the shares of capital stock of the various owners thereof a valuation of $31,066.65; that, upon the assessment so made and returned, the various district, county, and state taxing officers in conformity to the procedure of laws for the perfection of a tax claim against such shares of stock, did take, in due form of law, such steps for the assessment, equalization, levy, spreading, and charging of the tax against such shares of stock, and did take all such other proceedings, and did such other things as were necessary for the perfection of a tax against such shares of stock, taking all such steps, and doing all such things in exact conformity to the provisions of the law, and, if the said shares of stock were taxable under the laws of the state then existing, the tax thereafter mentioned would be a valid and existing tax charge against such shares of stock and against the

owners thereof, and would constitute a lien upon the said stock itself, and any dividends due the owners thereof, and upon all the assets of the plaintiff, under provisions of § 2117, C. L. 1913, which said tax so spread and made a charge was in the aggregate, at the time it became due, $699.01.

It further appears from the petition that the taxing officers of Cass county have treated the taxes so assessed, levied, and spread as a valid and existing tax charge, and as collectible; that the treasurer, as provided by law, has given notice to the plaintiff of the delinquency of the personal property tax, and has notified plaintiff that, if said taxes are not paid by October 15, 1921, he will deliver a statement of the taxes to the sheriff of Cass county as a part of the delinquent personal property tax list to be collected by distraint of plaintiff's property, and that in this the treasurer and sheriff are counseled and advised by George E. Wallace, as tax commissioner, and, unless restrained by the order of the court, will continue to do so; that the total amount of the tax, including penalty and interest, aggregates $782.89, which appears as a lien against plaintiff, though assessed against its individual stockholders. This, we think, is a sufficient statement in substance of the matter set forth in plaintiff's petition. The proceeding is brought by plaintiff for himself, and on behalf of all other banking corporations similarly situated.

To the petition the defendants interposed a demurrer, on the ground and for the reason that it does not state facts sufficient to constitute a cause of action.

There are several questions for decision presented in this proceeding; one of them is: Is the bank stock of state bank associations of this state, under the provisions of chap. 62 of the Laws of the Special Session of 1919, exempt from taxation as against either the bank as a corporate entity or the individual owners of the bank stock? Chap. 62 so far as material here provides:

Section 1. "Money and credits, as the same are defined in § 2074 of the Compiled Laws of North Dakota for the year 1913, including bonds and stocks, are hereby exempted from taxation; provided, however, that the income therefrom except as to income derived from loans on North Dakota real property shall be taxable under the provisions of chap. 224 of the Laws of North Dakota, for the year 1919 except as therein exempted; provided, further, that stocks and bonds shall be

subject to taxation in the manner provided by chap. 222 of the Laws of North Dakota for the year 1919."

Section 3. "Chap. 255 of the Laws of North Dakota for the year 1915 and chap. 230 of the Laws of North Dakota for the year 1917 as amended by chap. 226 of the Laws of North Dakota for the year 1919 and all other acts and parts of acts in conflict herewith are hereby repealed."

In order to arrive at the intent of the legislature in the enactment of chap. 62, it will be necessary to examine the context of several legislative enactments, and if, after such examination, it appears that it was clearly the intent of the legislature by that chapter to exempt state bank stock from the tax, here sought to be charged against it—unless there are other reasons knowing the tax is valid—then it should be so exempted, but if, on the contrary, it should clearly appear that the Legislature did not so intend, then the tax should be held to be a valid one.

It will perhaps assist in arriving at a definite conclusion with reference to the intent of the legislature in the enactment of chap. 62 to determine upon examination of other legislative enactments with reference to taxation whether the taxation of state bank stock has been dealt with in common with the taxation of the stock of other domestic companies or associations, or whether it has been segregated from them, and placed in a separate and distinct class, and then taxed under provisions of law specifically applicable to it; if it should appear that by the various legislative enactments which imposed a tax upon the stock of domestic companies and associations the stock of state banks is excepted from the operation of them, or if it appear that its taxation has been specially provided for by separate and specific laws, it would seem to follow as a natural conclusion that a law which in general terms exempts the stock of companies or associates from taxation, but which does not specifically provide that the terms of the law shall apply to the stock of state banks, applies to the stock of companies or associations exclusive of state banks.

The first provision of law to be examined in this respect is § 2103, C. L., which makes it the duty of the assessor to determine and fix the true and full value of all items of personal property, included in the personal property statement to the assessor. That statement under the provisions of said section sets out 27 different items of personal

property to be valued for taxation. Amongst others are the following:

(19) The amounts of moneys other than of banks, bankers, brokers, or stock jobbers.

(20) The amount or credits other than of banks, bankers, brokers, and stock jobbers.

(21) The amount and value of bonds and stocks, other than bank stock.

(22) The number of shares of bank stock, and the value thereof.

(23) The amount and value of shares of capital stock of companies and associations not incorporated by the laws of the state.

That section discloses a clear intent to deal with moneys and credits of banks and bank stock, with reference to ascertaining their value for the purpose of taxation, separately and apart from ascertaining the same thing as to the stock of other companies, corporations, or associations.

Section 2110, relative to when and by whom the property of companies or associations other than banks is listed, so far as material here provides:

"The president, secretary or principal accounting officer of any company or association, whether incorporated or unincorporated, except banking corporations whose taxation is especially provided for in this article, shall make out and deliver to the assessor a sworn statement of the amount of its capital stock."

This statement must also give the name and location of the company or association, the amount of capital stock authorized, the amount thereof paid up, the market or actual value of it, and other information not necessary here to mention.

It is clear that the stock of banking corporations is excepted from the operations of that section. It specifically says that the stock of banking corporations is especially provided for. In other words, for the purpose of taxation it is placed in a class by itself; the section is one providing for classification and listing for the purpose of taxation of the property of companies and associations exclusive of state banks. It has reference to the taxation of what is commonly known as the corporate excess of corporations, companies, and associations other than state banks. It was amended by chap. 221 of the Session Laws of 1919, and as amended provided as follows:

"The president, secretary or other principal accounting officer of

any corporation, joint-stock company or association, whether incorporated or not, except banking corporations, whose taxation is especially provided for in this article, shall make out and deliver to the assessor a sworn statement of the amount of its capital stock, setting forth particularly."

Then follows the same number of subdivisions as were contained in the original section, with some changes inserted therein not necessary here to mention. It will be noticed, however, that, in the language of the amendment, above set forth, it includes more than the section did as it originally stood. It contains the additional words "corporations" and "joint-stock company." These and other changes in the amendment show that the legislature gave consideration to every part of it, and hence must necessarily have determined that it was necessary to except banking corporations from its operation, as it was specifically there recognized that the taxation of banking corporations had been especially provided for.

The same section, as amended by chap. 221, supra, was again amended by chap. 119 of the Session Laws of 1921, where again banking corporations are excepted from the operation of the section as thus amended, and where again it is mentioned that the taxation of banking corporations is especially provided for. This is the third legislative recognition of this fact..

It is now proper to notice what provisions have been made with reference to the taxation of stock and property of banks, and in this connection § 2115 may be considered. By it, for the purpose of taxation, the valuation of stock of banks located in this state is specifically provided for.

By chap. 61 of the Session Laws of 1917, § 2115 was amended, and as amended is now the law, providing for the assessment of bank or trust company stock. It is the law which is now in force, and prescribes the manner of ascertaining the valuation of bank or trust company stock for the purpose of taxation. It provides:

"Section 1. That § 2115 of the Compiled Laws of North Dakota for the year 1913 is hereby amended and re-enacted so as to read as follows:

"Section 2115. *Bank and Trust Company Stock, Where and at What Valuation to be Listed.* The stockholders of every bank, and of every trust company, located in this state, whether such bank or trust

company has been organized under the banking laws of this state, or of the United States, shall be assessed and taxed on the value of the shares of stock, in the county, town, district, city or village where such bank or trust company is located, and not elsewhere, whether such stockholders reside in such places or not; such shares shall be listed and assessed annually with regard to the ownership and value thereof on the first day of April of each year. To aid the assessor in determining the value of such shares of stock, the accounting officer of every bank and trust company shall furnish a statement in duplicate to the assessor, verified by oath, showing the amount and number of such shares of capital stock of such bank or trust company, the amount of its surplus or reserve fund and undivided profits; the amount of its net investment in real estate, which real estate shall be returned in the name of the bank or trust company and shall be assessed and taxed as other real estate is under this article. To determine the real values of such real estate * * * which said bank or trust company has sold to any party or parties under any contract whereby the party or parties purchasing agrees to pay all taxes levied against such property. The assessor shall deduct the net amount of said investment in real estate from the aggregate amount of such capital stock, surplus and undivided profits and the remainder shall be taken as a basis for valuation of such shares of stock in the hands of the stockholders subject to the provisions of law requiring all property to be assessed at its true and full value, or as such property may be by law classified for assessment. Provided, however, no bank or trust company shall be permitted a deduction for net investment in real estate of more than sixty per cent. of its capital stock, surplus and undivided profits; and provided further, that upon written request of the accounting officer any solvent bank or trust company may have the total amount of the assessment herein provided for as against each shareholder to be assessed against the bank or trust company in its corporate name and the taxes accruing thereon paid as other expenses of the bank or trust company are paid. The shares of capital stock in national banks, not located in this state, held in this state, shall not be required to be listed under this article.

"Approved, March 9, 1917."

Thus it is manifest that the Legislature has definitely and distinctly prescribed one method for ascertaining the value of the shares of stock of corporations, joint-stock companies and other associations for the pur-

pose of taxing their corporate excess, and has prescribed an entirely separate and distinct method for obtaining the valuation of bank stock for the purpose of its taxation.

The valuation of each having thus been ascertained, unless exempted as the stock of corporations, joint-stock companies and associations other than banks, by chap. 62 as it now is, it is subject to taxation the same as other personal property, unless a different tax is by law specified.

It may further be observed that at the same legislative session that enacted chap. 61 there was also enacted chap. 230, and that both were approved on the same day, to wit, March 9th. Neither of these laws contained an emergency clause, and hence became effective on the same date, July 1, 1917.

Section 1 of chap. 230 provides that—

" 'Money' and 'credits' as the same are defined in § 2074 of the Compiled Laws of 1913, including bonds and stocks, are hereby exempted from taxation other than that imposed by this act, and shall hereafter be subject to an annual tax of three mills on each dollar of the fair cash value thereof. But nothing in this act shall apply to money or credits belonging to incorporated banks or building and loan associations situated in this state, nor to any indebtedness on which the tax is paid under a mortgage registration act, or is exempted by statute."

It will be noticed that the legislature by this section was careful to except banks from the operation of that law.

It is too clear to admit of any controversy that the policy and intent of the legislature to deal with the taxation of bank stock, and that of other companies or associations separately, is clearly manifested by the enactment of the two chapters last mentioned at the same session, where by one the stock of state banks, as had theretofore always been done, was placed in a separate and distinct class for the purpose of assessment and taxation, and by the other the stock of companies and associations other than state banks were placed in an equally separate and distinct class.

If this were not true chap. 61 would not, we assume, have been enacted. It cannot be successfully contended that it was enacted inadvertently. It cannot be said that the Legislature did not have a distinct purpose in its enactment.

Section 1 of chap. 255, Session Laws of 1915, provides:

" 'Money' and 'credits' as the same are defined in § 2074 of the

Compiled Laws of 1913, are hereby exempted from taxation other than that imposed by this Act, and shall hereafter be subject to an annual tax of two mills on each dollar of the fair cash value thereof. But nothing in this act shall apply to money and credits belonging to incorporated banks situated in this state."

Again do we see that the legislature has disclosed the same plain policy and intent in harmony with that theretofore and thereafter continuously manifested. This chapter was likewise repealed by chap. 62. Its consideration here is for the same purpose as that of 230, to wit, to ascertain the policy and intent of the legislature in the enactment of 62.

We think it must be evident from a thorough examination of all of the chapters and sections above mentioned, that the legislature dealt with the taxation of the stock of companies and associations separately, from the taxation of the stock of banking corporations; that it is clear that it has enacted certain laws relative to the taxation of stock of companies and associations, and likewise has enacted certain other and distinct laws relative to the taxation of banking associations which have no application to other companies or associations, and that it was the clear intent of the legislature to deal with banking corporations, with reference to the taxation of their stock in a particular manner; in short, it would seem that it has continuously been the policy and intent of the Legislature to deal with the taxation of the stock of companies and associations and the taxation of stock and banks by entirely separate and distinct laws.

This being true, we think the same policy and intent was present with the legislature when it enacted chap. 62, and that, as there is no expressed intent in that act, and no particular language there used, which makes it applicable to banking corporations, in the light of its past clear purpose and intent to deal with the taxation of banking corporations and of their property separately, the act should be held to apply only to companies and associations other than banking, and this even though § 1 of chap. 62, hereinbefore set out in full, be considered in part an affirmative enactment.

If that section be affirmative legislation, it relates only to companies and associations other than banking, for, as the legislative policy and intent prior to the enactment of chap. 62 was to deal with the taxation of corporations, companies and associations in a separate and distinct manner than it dealt with the taxation of banking corporations, and

that policy and intent being clearly manifested in the enactment of separate legislation for the taxation of such corporations, companies and associations on one side, and that of banks on the other, and that policy and intent being further distinctly manifested as late as the enactment of chap. 230 and chap. 61 of the Laws of 1917, where, by the former, money and credits, including stocks and bonds of companies and associations other than banks, were listed for taxation in one specific manner, while by the latter that of banking associations was listed for taxation in another equally distinct and specific manner, it would seem to follow as a natural and uncontrovertible conclusion that, if there had been any change in the prior policy and intent of the Legislature at the time of the enactment of chap. 62, it would have expressed it in the enactment of that chapter, not having done so, it seems certain that its theretofore universal policy and intent in this respect still remained, and that in the enactment of chap. 62 it dealt with companies and associations other than state banks.

Plaintiff contends that that part of § 4 of chap. 62, which provides that "All other acts and parts of acts in conflict herewith are hereby repealed" is broad enough to include the repeal of all laws relative to the taxation of bank stock. In view of what we have above said, we do not agree with this contention. As we view the enactments with reference to the taxation of bank stock, they are not in conflict with chap. 62, because they are not included within it. We are convinced that chap. 62 refers only to stocks and bonds of corporations, joint-stock companies and associations other than banks, and this appears the more clearly when it is considered that the various chapters specifically repealed by § 3—viz. chap. 255 of the Session Laws of 1915, chap. 230 for 1917—as amended by chap. 226 of the Laws of 1919, all relate to the taxation of the stock and bonds, etc., of corporations or companies other than banks, and necessarily it would seem to follow that the expression, "All other acts and parts of acts in conflict herewith are repealed," refers to any other laws of like nature which related to the taxation of certain corporations, companies, or associations not including banks.

Having thus concluded that chap. 62 has no application to banks, a definition of the terms, "moneys and credits" and "stocks and bonds," or the legal interpretation of those terms as there used, becomes entirely unnecessary. Counsel for plaintiffs have compiled an able brief

which deals extensively with the interpretation of those terms, citing
therein at length the decisions of many courts dealing with their in-
terpretations; but, if we are correct in the conclusion at which we have
arrived—and of that we are quite certain—such reasoning has no appli-
cation to this case.

I will at this point give some consideration to the majority opinion,
which we think gives no effect to chap. 61. Section 176 of the Consitution
as amended, which as we understand its meaning, permits personal proper-
ty to be classified for the purpose of taxation, requiring, however, the
tax to be uniform on the same class of property. Bank stock has been
so classified. Chap. 61, we contend, deals with the valuation and assess-
ment of that class, while chap. 230 relates, as we claim, to the taxation
of the stock of corporations and associations generally other than banks.

It cannot be contemplated nor successfully contended that the leg-
islature was engaged in an idle act in passing chap. 61, especially in
view of the fact that it aws passed at the identical time as was chap. 230.

The majority opinion is to the effect that the meaning of chap. 62
is plain. It is, however, very clear that its meaning and intent is not de-
ducible from that act alone, but from all of the laws and statutes which
we have heretofore mentioned. We think also that state banks of this
state have always construed chap. 61, or § 2115, C. L. 1913, as applicable
to banks only, and that they were placed in a special class for the pur-
pose of taxation; that, even during the time that the money and credit
acts of 1915 and 1917 (chap. 255, Laws 1915, and chap. 230, Laws 1917)
were in force, we think it a matter of common knowledge that they
paid the taxes on their stock by virtue of the provisions of chap. 61
and § 2115.

Let us look a little further to find additional proof that the legisla-
ture in the enactment of chaps. 61 and 230 at the same time had placed
bank stock in one class and the stock of other corporations in another
and distinct class for the purpose of taxation. Under chap. 61 bank
stock is assessed in the county, town, district, city, or village where the
bank or trust company is located, and not elsewhere, and this whether
such stockholders reside in such place or not; they are there assessed
with regard to their ownership and value on the 1st day of April each
year. The statute thus fixes the situs of taxation of bank stock; those
who own bank stock must pay a tax at the situs fixed by the statute;
as to nonresident owners of bank stock, if it should be contended that

they cannot be bound by the statute, nevertheless it is a rule of law well established by the decisions that it must be taxed in the city or town in which the bank is located. McHenry v. Downer, 116 Cal. 20, 47 Pac. 779, 45 L. R. A. 737. This case states the true rule, which is that bank stock is taxable in the city or town where the bank is located. See note to this case for a lengthy discussion of the whole subject. Hence it seems clear that all bank stock on its valuation as ascertained under chap. 61 is taxed locally, and at the local rate of taxation. In other words, it is taxed just the same as a local stock of goods, machinery, a herd of horses or cows, or any other local property is taxed. This, however, is not true of the property mentioned in chap. 230. By the provisions of that law the property therein mentioned is to be listed for the purpose of taxation under the provisions of § 2095, which provides that the capital stock and franchises of corporations and persons shall be listed in the county, town or district where the principal office or place of business of such corporation or person is located in this state; and, if there be no such principal office or place of business, then personal property pertaining to the business of a merchant or manufacturer or corporation shall be listed in the town or district where the business is carried on. Thus the legislature, in the enactment of chaps. 61 and 230, clearly distinguishes banking corporations from all other corporations.

The majority opinion, in endeavoring to show there is no inconsistency between chaps. 61 and 230, which, as we have seen, were both enacted at the same time at the 1917 legislative session, contains the following:

"Chap. 59 of the laws of the same session, which was also approved on the same day, provides a classification scheme by virtue of which bank stock falls in the class subjected to the highest valuation. Class 1 reads in part: 'All land, town and city lots, railroads, bank stock, express and telegraph property shall constitute class 1,' etc. And in providing for class 3 we find this language: 'All household goods, and household equipment and wearing apparel, structures and improvements upon farm land, stocks other than banks, bonds, money and credits, provided that such stocks, bonds, money and credits are not otherwise assessed under a mill or flat rate law, shall constitute class 3,' " etc.

Continuing the majority opinion states as follows:

"Clearly the legislature was impressed with the desirability of dis-

tinguishing between bank stock and other stocks for purposes of classifving property for taxation, and, to make the distinction effective, it spoke of bank stock alone in one place and of 'stocks other than banks' in another.   Similarly the distinction has always been made in the listing law, previously quoted in this opinion, showing that, where bonds and stocks generally were listed, bank stock would be included were it not for the expression 'bonds and stocks other than bank stock.' "

We respectfully desire to call the majority's attention to the fact that chap. 59 is no longer a law, but it has entirely ceased to exist, having been amended by chap. 220 of the Session Laws of 1919, which classifies property for assessment into two classes.   Section 1 provides:

"All real and personal property subject to a general property tax, not exempt by law, not subject to any gross sales or other lieu tax, is hereby classified for purposes of assessment for taxation as follows:

"Class 1.   Class one shall include the following which shall be valued and assessed at one hundred per cent. of the full and true value thereof:

"(a)   All railroads and other public utilities, together with franchises, and all real and personal property employed in connection therewith.

"(b)   All land, exclusive of structures and improvements thereon.

"(c)   All bank stocks.

"(d)   All flour mills, elevators, warehouses and storehouses of all kinds; buildings and improvements upon railway rights of way or sites leased from railway companies or other public utility corporations, and structures and improvements on town and city lots used for public purposes.

"Class 2.   Class two shall include the following, which shall be valued and assessed at fifty per cent. of the full and true value thereof:

"All live stock, agricultural and other tools and machinery; gas and other engines and boilers; threshing machines and outfits used therewith; all vehicles, automobiles, motor trucks, and other power driven cars; boats and all water craft, harness, saddlery and robes, structures and improvements used for homes upon town and city lots;   and all property not herein specifically mentioned."

It will be seen that the expression so much emphasized in the majority opinion, and which was contained in chap. 59, to wit:

"Stocks other than banks, bonds, money and credits, provided that such stocks, bonds, money and credits are not otherwise assessed under a mill or flat rate law, shall constitute class three"

—has entirely disappeared from the law and was not retained in chap. 220, a very potent fact, as it demonstrates that the legislature knew that this character of stock and money and credits were assessed and taxed under chap. 230, and therefore could not be classified under chap. 220. It further shows that the legislature knew that they were taxed at 3 per cent. of the value; it shows further that bank stock was subject to the general tax to be assessed and levied on its value and collected in the county, city, town, or district where the bank is located, just in the same manner as a similar tax is assessed and collected against flour mills, elevators, warehouses, or land. It throws much light upon the intent of the legislature in passing chap. 62; it reasonably shows that bank stock is in a class by itself, and that other stocks, bonds, moneys, and credits are those which are included in chap. 230, and in § 3 of chap. 59. It must be kept in mind that at the time chap. 220 was passed chap. 230 was still in force. We think chap. 220 clearly indicates the legislative intent as to what kind. of stocks were dealt with in chap. 230 and in chap. 62. As to the specifically repealing clause of chap. 62, it seems certain that refers to chap. 230 and 255, and, if bank stock is not of the class of stocks mentioned in either of those chapters, it could not have been affected by the repeal of them, nor by the exemption from taxation of the character of stock mentioned in them.

The majority opinion lays much stress on the decision of the United State Supreme Court in the case of Merchants' National Bank of Richmond v. City of Richmond and other decisions of that court which are to the same effect, and all cited in their opinion. The principal point determined in that case is that a state cannot place a rate of taxation on national bank stock which is higher than that placed upon moneyed capital in the hands of individual citizens invested in loans on securities for a permanent or temporary purpose, where such moneyed capital is in competition with national banks, or the money of national banks, and this for the reason that the imposition of the tax in such a manner would be contrary to the provisions of § 5219, Revised Statutes U. S. We agree with those decisions, and by reason of them the taxing officers of this state can impose no tax upon the stock of national banks. This, however, does not determine one of the material questions presented in this case, viz. the validity of the tax imposed upon state bank stock. We have no hesitancy in stating that the fact that state bank stock is taxed, and that national bank stock will be untaxed is immaterial here. It is not

the business of this court by its decision to place state banks on par with national banks, with reference to the taxation of their stock. Is the tax imposed on the stock of state banks valid? is the question we must decide, together with questions of jurisdiction and other vital questions which we will soon reach. The United States Supreme Court has made its determination with reference to the taxation of national bank stock, but that is as far as it can go; it can determine nothing with reference to the validity of tax on state bank stock, for that is a matter entirely within the jurisdiction of the state and of the state court, and, as we have seen, the sate can classify personal property in the state for taxation, and can impose a higher tax on one class than another.

Perhaps national banks whose stock cannot now be taxed for the reasons above stated will have an advantage over state banks whose stock is taxed, but to put them on a plane of equality by annulling the tax on state bank stock is not here the business of this court, and the majority cannot point to a law which authorizes them to do so. The fact that national banks will thus gain an advantage is no reason why state bank stock should escape paying a valid tax, nor should the fact of that advantage in favor of the national banks be allowed to obscure the real questions here presented. Let the majority compare the disadvantage thus suffered by the state banks with the loss and injury the state will suffer if the valid tax on state bank stock is judicially cancelled.

Another point which is of vital importance to this case, and which must be kept steadily in mind, is that, if any tribunal or body of officials has any jurisdiction of the matters herein involved at this time, which we very much doubt, it is the county commissioners.

The petition for the writ shows that plaintiffs had full knowledge of all that the taxing officers did with reference to the taxation of their stock. It shows that the plaintiffs, through its proper officers, under § 2115 (chap. 61) did furnish a statement showing the value of its shares of stock on April 1st; the statement also shows the amount of its surplus, reserve fund, and undivided profits, as required by law. This statement was verified by oath. It further shows that various district, county, and state taxing officers proceeded in exact conformity to law for the perfection of the tax claim against the shares of stock, and did take in due form of law such steps for the assessment, equalization, levying, spreading, and charging of the tax against such shares of stock, and did all such other things as were necessary for the perfec-

tion of the tax claim against such shares of stock. It further shows that at the time of making this statement the owners of the shares of stock claimed that the stock was not liable to taxation, but that they were exempt from the year 1920.

It is clear, therefore, that the plaintiffs concede that every step necessary has been taken by the respective taxing officers—that is, that there was a proper assessment made; that the county equalization board, at its regular meeting in July of 1920 and 1921 properly equalized the assessment, and gave proper notice of review thereof under § 2138, C. L. 1913. It is also clear that the plaintiffs did not appear at the July meeting of either year to object to the taxation of their stock. If there were any objections to the assessment of the stock, which it is conceded has been properly made, or any to the taxation of their stock, they should have been made to the board of county commissioners at their annual July meeting for equalization and review of assessments and levy of taxes, and, if plaintiffs were dissatisfied with the determination there made by the county commissioners, they could have appealed from their decision to the district court, and this under the provisions of § 3298, C. L. 1913. They did not do this, but remained quiet for about two years, and permitted the different taxing officers, the state, and the governmental subdivisions and school district to believe the tax against their stock was available as part of the public revenues, and permitted them to take it into consideration in the determination of the amount of public revenues necessary to be raised. It would seem that they should not now be permitted to question the validity of the tax. They claim to have served a demand at the time of commencing this action on the county commissioners to abate the tax. This did not aid them. Under chap. 172 of the Constitution, and § 3276, C. L., and under laws which have been or may be enacted under the provisions of chap. 173 of the Constitution prescribing the duties of county commissioners, the board of county commissioners have control of the fiscal affairs of the county. After the meeting on the first Monday in July of each year, the meeting at which the board acts as a board of equalization and a board of review, and levies the tax, all proceedings of the meeting must be legally published. Thus again have plaintiffs had full notice of all proceedings.

The determination of whether a tax is valid or invalid is a fiscal affair, of which the board of county commissioners has jurisdiction, and objections, if any, should have been presented to that board at the July meeting. First National Bank v. Steenson, 25 N. D. 629, 146 N. W.

1061. It was there that a state bank desiring to challenge the validity of the tax should have made its claim. The county commissioners of each county of this state must first have an opportunity to determine the validity of the tax on the stock of state banks located within their respective counties, and, unless that has been afforded them, and within the time and at the place specified by law, it would seem plaintiffs and others similarly situated have no cause of action, for, having had knowledge of the assessment and of the tax levied, and having made no objection at the July meeting, they cannot be heard thereafter to complain as we shall hereafter show.

A matter to which we desire at this point to call attention, and which the majority opinion entirely overlooked, is chap. 118 of the Session Laws of 1921. It was enacted, we believe, particularly to prohibit the kind of action here brought as well as all actions seeking to prohibit the collection of a tax validly assessed until there is a compliance with its terms. It was also enacted to repudiate and wholly nullify the rule announced by this court in Bismarck Water Supply Co. v. Burleigh County, 36 N. D. 191, 161 N. W. 1009, in so far as the rule there announced asserted the power of the court to grant relief against the collection of an unfair or an unequal tax, or one that is claimed to be void, without the matter having been first submitted to the jurisdiction of the county commissioners for determination. The title of the act is:

"An act restricting rights of litigants to bring actions in courts to set aside taxes or assessments or to recover taxes before submitting their claims to the board of county commissioners for adjustment, and dismissing actions, heretofore brought."

The act provides:

"Section 1. *Actions Not Allowed—When.* No action shall be brought in the courts of this state to annul any taxes or tax assessments or to recover back taxes erroneously paid, or any part thereof, until the same shall first have been submitted to the board of county commissioners for adjustment in accordance with the existing law, and all actions hereinafter brought, or heretofore brought which have not been prosecuted to judgment, shall, on motion be dismissed without prejudice, provided, that this act shall not apply to special assessments."

This action was brought since the above statute has been in effect, and it would seem by its terms that the plaintiff is without authority or right at this time to bring this action.

We think we have clearly shown that the tax on state bank stock is valid, and that the plaintiff has no cause of action. Before the majority by their opinion prevent from being collected over $1,000,000 of taxes now due from state banks, who are the best able financially of any in the state to pay those taxes, and thus cripple the schools, municipalities, and state to such an extent that it will make it very difficult for them to function as they should function, they should give very serious consideration to what has here been stated.

But let it be assumed that the Legislature had not enacted chap. 118, prohibiting the bringing of action of this character without first having submitted the matter to the county commissioners; we still maintain that the plaintiffs have no legal standing in this or any other court. It avers that in this proceeding it is acting in its own behalf, and all other corporations similarly situated. It further shows that the capital stock of the bank is $10,000, and its surplus and undivided profits $21,066.65, an aggregate of $31,066.65, and that the assessment made and returned was against the shares of capital stock and the various owners thereof at that valuation. It appears further that the tax was levied against these shares of stock, and that it was spread and charged against them, and that all steps were taken to make a valid tax against them under the provisions of § 2117, C. L., and that the aggregate of the tax was $699.01 for the year 1920.

It is now proper to notice that none of its stockholders are a party to the action; none of them are here complaining, and, under the law, who else has a right to complain. There is no showing here that plaintiff has any authority to represent them. There is some statement to the effect that the stockholders are claiming to the plaintiff that the tax against their stock is illegal and void; but that is of no consequence, as they might tell the same thing to any one. The plaintiffs also state in the petition that the sheriff will collect the taxes by distraint against its property, but that statement is without any force or effect, as there is no tax levied against any of its property, but a tax is levied only against the property of stockholders. The shares of stock were properly assessed to their owners respectively as individuals. Plaintiff has no right to complain if the personal property of others is seized to pay their taxes; the only property that the sheriff is empowered to seize in satisfaction of personal property, is the property charged with the tax. First National Bank v. Steenson, 25 N. D. 629, 146 N. W. 1061. It is true since that decision § 26 of chap. 132 of the Session Laws of 1890 has

been amended, but that does not destroy the reasoning of that case.

Under § 2117, C. L., to secure the payment of taxes on bank stock or banking capital it is the duty of every bank or managing officer or officers thereof to retain so much of any dividend or dividends belonging to such stockholders or owners as shall be necessary to pay any taxes levied on their shares of stock or interest respectively, and the amount of such taxes shall be a lien on the dividends, the capital stock, and the assets of the bank, and, until it shall be made to appear to the county treasurer that such taxes have been paid, any officer of any such bank or its officers, who shall pay or authorize to pay over, or authorize the paying over of any such dividends or portion thereof, contrary to the provisions of this section, shall thereby become liable for such tax. It is clear that the bank can have no liability if it obeys the law; if it disregards the law, and pays over the dividends, then it may become liable, but that would be its own fault and not that of the law. In this case it has paid over no dividends, and therefore is under no liability. If the tax is not paid, what is the procedure? What is to be done? Very plain is the answer. The county treasurer where the bank is located simply sells the shares of stock or interest of each stockholder to pay the same, just the same as any other personal property would be sold, and, in case of sale, transfers the stock just the same as if it had been sold under execution. It must be kept in mind in this case that the stockholders own all the shares of stock, the capital, the surplus, and undivided profits.

Under § 2116, at all times in every bank there must be kept a full and correct list of the names and residences of the stockholders, the number of shares owned and controlled by each party in interest; this is subject to the inspection of the officers making the assessment, and the cashier of each bank must furnish the assessor with a duplicate copy of all that is required under that section, all of which further shows the plaintiff has no cause of action. Can any one contend that, if the shares of stock, all of which belong to the stockholders, were sold, as provided by law, sufficient would not be realized to pay the taxes? The answer is, Certainly not.

We further say that no other sound or tenable conclusion can be reached than that, even if the law were the same as before chap. 118 was enacted, plaintiff has no cause of action.

Whether the capital stock of state banks is subject to the franchise or excise tax provided by chap. 222 of the Session Laws of 1919, or whe-

ther state banks are subject to the tax provided by chap. 224 of the Laws of 1919, are not questions here presented. The majority opinion contains the following:

"It is not the duty of this court to legislate nor to search for a hidden meaning of plain and hitherto unambiguous words employed by the Legislature. We are not free to enter into the realm of speculation."

If that language is applicable to any opinion, in this case it is that of the majority, for their opinion would seem to in effect judicially repeal and nullify chap. 118 of the Session Laws of 1921. It would seem also to judicially legislate that a taxpayer is not bound to object to his assessment within the time and in a manner fixed by law, in that he can wait until the taxes are placed into the hands of the sheriff for collection, and then assert reasons for nonpayment, which should have been presented to the board of county commissioners, and there is much more that we might say in just criticism of the majority opinion.

It seems clear from all we have above stated that this court should not attempt to assert or assume original jurisdiction herein.