COUNTY OF BURLEIGH, a Municipal Corporation, Appellant, v. STANDARD OIL COMPANY OF INDIANA, a Foreign Corporation, Respondent,

---

COUNTY OF BURLEIGH, a Municipal Corporation, Appellant, v. INTERNATIONAL HARVESTER COMPANY OF AMERICA, a Foreign Corporation, Respondent.

(201 N. W. 510.)

**Taxation — statute providing for taxation of value of corporate stock over and above value of property not applicable to foreign corporations.**

1. Section 2110 of the Compiled Laws of North Dakota for 1913, as amended

by chapter 221 of the Laws of 1919, chapter 110 of the Laws of 1921 and chapter 305 of the Laws of 1923, provides for the taxation of the corporate excess of domestic corporations, or the value of the corporate stock, over and above the value of the real and personal property and is not applicable to foreign corporations.

**Taxation — foreign corporations not subject to taxation of value of stock over and above value of property, as capital employed in tax district.**

2. Foreign corporations which presumptively have been taxed from year to year upon their real and personal property within the state during the assessment period, are not subject to taxation as upon "corporate excess," under the statutes referred to in paragraph 1, upon the amount of "capital employed" within a given taxing district.

Opinion filed December 8, 1924.

Taxation, 37 Cyc. p. 861 n. 18; p. 862 n. 30.

Appeal from the District Court of Burleigh County, *Coffey, J.* Affirmed.

*E. S. Allen,* State's Attorney, and *F. O. Hellstrom,* for appellant.

*O'Hare & Cox; Conmy, Young & Burnett (C. W. Martyn, F. E. Packard, Zuger & Tillotson,* and *E. R. Lewis,* of Counsel), for respondents.

To create a tax and provide for the enforcement of its collection, is an act purely legislative in its character. 26 R. C. L. 13; 37 Cyc. 724 E.

The requirement that the Legislature provide a mode for the ascertainment of the value of property—the assessment of it—so that it may be assessed according to its value, and that the taxes collected from it be equal and uniform with those assessed upon other property of the same value, is equally mandatory, and before any property can be valued and assessed for taxation a proper method and machinery for such valuation and assessment, must be provided. Bank v. Memphis, 101 Tenn. 158, 46 S. W. 557; Railroad Co. v. Williams, 101 Tenn. 146, 46 S. W. 448.

The public is not chargeable with notice of any meeting of such board except that designated in the statute. Taxpayers are invited by

the law to attend at an appointed session of the board, and present to the board any grievances which they may have on account of assessments made on their property. No other opportunity for hearing is given, and, if no session is had at the time and place prescribed, there is no chance to be heard at all. This is fatal to the tax in all cases where the law bases the tax upon an official valuation, and in terms gives the taxpayer an opportunity to be heard. Actual injury need not be shown; the law will presume an injury on grounds of public policy. Power v. Larabee, 49 N. W. 724.

Capital employed merely means assets employed in the State for purposes of franchise taxes, and is not an item of property tax. People v. Morgan (N. Y.) 70 N. E. 967; People v. Dederick (N. Y.) 55 N. E. 927; People v. Williams (N. Y.) 91 N. E. 266.

The intangible value of a foreign corporation can only be taxed under a specific statute. New Orleans v. Stempel, 175 U. S. 309, 312; Hart v. Smith (Ind.) 64 N. E. 661; People v. Dederick (N. Y.) 55 N. E. 927.

A tax on the entire capital stock or value of the entire capital stock of a foreign corporation is unconstitutional because it taxes property outside of the jurisdiction and therefore takes property without due process of law in violation of the 14th Amendment. Western U. Tel. Co. v. Kansas, 216 U. S. 1; Looney v. Crane Co. 245 U. S. 178; International Paper Co. v. Mass, 246 U. S. 135.

It is doubtful if the intangible value of a merchandising corporation could be allocated by any unit rule. Fargo v. Hart, 193 U. S. 490; Utah-Idaho Sugar Co. v. Salt Lake County (Utah) 210 Pac. 106.

Under familiar principles, therefore, where two constructions are possible, the courts are bound to take the construction which would render the statute constitutional, namely, that limiting it to domestic corporations only. State ex rel. v. Taylor (N. D.) 156 N. W. 561; United States v. Standard Brewing Co. 251 U. S. 211, 220; United States v. Delaware & H. Co. 213 U. S. 366, 408.

BIRDZELL, J. These are separate appeals from judgments entered in each of the above cases and from orders denying the plaintiff's motions to set aside the judgments. The cases are companion cases in the sense that they involve the same questions of law. They were con-

solidated in the lower court and one opinion will suffice for both cases. The facts in the case of the County of Burleigh v. Standard Oil Company are substantially as follows: The county commissioners of Burleigh County, on July 11th, 1923, passed a resolution to the effect that notices be served on various unnamed persons or corporations whose property had escaped taxation, that the auditor be authorized to employ a clerk to prepare data and that a hearing on such matter be held at 10 o'clock A. M. July 25th in the county auditor's office. The Standard Oil Company was a foreign corporation from the years 1918 to 1922, both inclusive. By a notice signed by the county auditor of Burleigh County, dated July 17, 1923 and duly served upon it, it was advised that the auditor had reason to believe, from information furnished through various sources, that its returns of assessments for taxation during the years 1918, 1919, 1920, 1921 and 1922 were incorrect, that it had failed and neglected to list and return anything for the value of the corporate excess owned by it during the years mentioned and that such corporate excess had escaped taxation during this period; wherefore, it was summoned to be present at a meeting of the board of county commissioners of Burleigh county on the 25th day of July, 1923, to show cause why its corporate excess should not be put on the tax rolls to be listed and extended for taxation according to law. It was further summoned and ordered to bring with it such books and records as it might have showing the value of all real and personal property belonging to it in the county of Burleigh and also showing a full statement of the capital employed by the company in the territory covered by it and the net earnings thereon during the said years. It was then notified as follows:

"That the said corporate excess owned, possessed and employed by you in the county of Burleigh and State of North Dakota during each of said years, and upon which no return for taxation has been made and upon which no taxes have been paid during the years commencing with 1918 and ending with 1922, is as follows:

For the year 1918 Property to the value of $477,184 escaped taxes.
For the year 1919 Property to the value of   667,943 escaped taxes.
For the year 1920 Property to the value of   665,569 escaped taxes.
For the year 1921 Property to the value of   660,314 escaped taxes.
For the year 1922 Property to the value of   722,724 escaped taxes.

"And you are hereby notified to appear before the Board of County Commissioners of Burleigh county, North Dakota, at their office in the court house, in the city of Bismarck, North Dakota, on the 25th day of July, 1923, at the hour of ten (10) o'clock A. M., then and there to show cause why such property should not be assessed at the amount above specified, and you will then and there be given an opportunity to show that the statement herein made is not correct."

To this citation the company filed its return objecting to the jurisdiction of the board of county commissioners to list, for purposes of taxation, the corporate excess of the company on the ground that if such corporate excess existed it was intangible personal property, the situs of which for taxation purposes was beyond the jurisdiction of the board and the taxing officials of the state of North Dakota; also denying the jurisdiction of the board to list such property for taxation for the reason that no statutory power to that end had been vested in it; also denying that the company had any property in the nature of corporate excess subject to taxation in the county of Burleigh and state of North Dakota. The hearing on the matter before the board of county commissioners was continued from time to time, but on September 5, 1923 the following resolution was passed:

"Moved by Commissioner Moynier, seconded by Commissioner Swanson, that; Be it resolved, that the escaped taxes on account of the capital employed by the Standard Oil Company being the incorporeal assets used and employed in the County of Burleigh, State of North Dakota, in the transaction of their business is hereby adjusted and equalized for the years 1918, 1919, 1920, 1921 and 1922.

1918—$238,592; 1919—$333,971; 1920—$332,784; 1921—$330,-157; 1922—$361,362;

No part of which for corporate franchise authorizing the corporation to exist.

On roll call all commissioners present voted aye."

Thereafter an appeal was perfected from the decision of the board of county commissioners to the district court of Burleigh County, and, upon hearing the appeal, the district court entered a judgment declaring the assessments to be illegal and void, made without authority of law and in contravention of the statutes of the state and adjudging that

they be discharged and cancelled of record. From this judgment the county appeals.

The facts in the case of the International Harvester Company are the same in all substantial particulars. The resolution purporting to adjust and equalize the assessments for the years in question embodied assessments against it as follows: 1918—$97,972; 1919—$143,488; 1920—$152,194; 1921—$170,203; 1922—$210,040. Thereafter, the county auditor spread upon and entered in his records certain taxes in varying amounts based upon the above assessments.

In these appeals the appellant contends that the judgment of the lower court should be reversed for three main reasons. First, that the corporate excess of the defendants is taxable in the state of North Dakota under Section 2110 of the Compiled Laws of 1913; second, that there was jurisdiction for tax purposes in the board of equalization of Burleigh County over the person and property of the defendants and respondents; and, third, that the defendants and respondents had (by their appearances before the board of equalization) waived any rights they might have had to question the procedure leading up to the assessments involved. Obviously, unless the appellants' first contention is sound, it will be unnecessary to consider the other questions, for if the county auditor had no authority to assess, and the board of equalization no authority to equalize assessments of, property such as is described in the notices and resolutions above mentioned, we are not concerned with the procedure used to place such property upon the tax rolls. There can be no doubt on the record before us that the respondents objected at every step of the proceedings on the ground that they had no property of the character described in the notices which was subject to taxation in Burleigh county and in the State and which had escaped.

As we understand the main contention of the appellant, it is that foreign corporations are subject to assessment upon their corporate excess under § 2110 of the Compiled Laws for 1913. However, we find some difficulty in comprehending the meaning that appellant's counsel place upon the term "corporate excess" in this connection. It seems to be recognized that Section 2110 of the Compiled Laws outlines a method by which to reach for taxation any value attaching to the stock of a corporation over and above its property which may be otherwise

taxed. Grand Forks County v. Cream of Wheat Co. 41 N. D. 330, 170 N. W. 863. Yet it is conceded that with respect to foreign corporations this state may not tax the entire excess of a foreign corporation which is licensed to transact business within the state, and it is assumed, with respect to such corporations, that the excess, if any, should be apportioned to this state—even to the taxing district in which any business is transacted—according to the "capital employed," and counsel argue at various places in their brief that the so-called excess sought to be reached through the proceedings in the instant case is localized through the presence within Burleigh County of certain physical properties. To illustrate this contention, it is stated in the brief that the "Standard Oil Company is actively engaged with its business within the borders of the taxing jurisdiction of Burleigh county. That it has a large warehouse and maintains offices in the county and sells and distributes a large quantity of its goods, wares and merchandise; that the said goods are received by the local branch, and that all such goods represent capital employed in the business.

"Also, that the respondents, the International Harvester Co., maintains a general agency within the taxing jurisdiction of Burleigh county, has its general agency office at Burleigh county. That it has large extensive business interests and warehouses and railroad trackage for the purpose of storing and transferring and distributing its products in a large territory. That goods are received by the general agency and sold and distributed and that all of said goods received by the general agency, and sold and distributed, represents capital employed within the taxing jurisdiction.

"Further, the court may take notice of the nature of the respondents' business. It is well known that the territory of Burleigh county and the territory served by the general agency is one in which a large volume of the respondents' goods, wares and merchandise are sold and consumed, and that a very material portion of the capital of the respondents is employed within the taxing jurisdiction of Burleigh county."

Elsewhere in their brief counsel say "that a large volume of personal property representing capital employed by the said respondents is brought into the county of Burleigh each year; that capital employed in this manner aggregates large sums of money and capital thus em-

ployed is personal property with its situs for taxation at Bismarck in the county of Burleigh," and that the measure of "the capital here employed is that part of its total capital which from time to time is allocated to the use and furtherance of its business at Bismarck, where it is employed to carry on its trade and business, in the territory thereto."

Again, elsewhere, it is said that no question is involved as to the "taxability of the corporate franchise granting it the right to exist, but it is claimed that the corporation is exercising its corporate franchise beyond the borders of the parent state and has been granted a franchise by this state to do business, employ capital, and establish a business domicile in this state," and that "capital so employed may be treated the same and taxed the same as the corporate excess or the stocks and bonds of the corporations that are incorporated in this state." It is said that Section 2110 of the Compiled Laws of 1913 applies to the respondent corporations and furnishes a method by which to value the "excess" sought to be taxed as "capital employed." We have set forth thus fully and particularly the contentions of counsel in order that the difficulty we experience in comprehending the position taken may be better appreciated.

Section 2110 of the Compiled Laws of 1913, as amended by chapter 221 of the Laws of 1919, chapter 110 of the Laws of 1921 and chapter 305 of the Laws of 1923, makes it the duty of the president, secretary or principal accounting officer of any corporation or association, except banking corporations, to deliver to the assessor a sworn statement showing the amount of capital stock, the name and location of the company, the market or actual value of the shares, the indebtedness, and the value of real and personal property and then directs this statement to be used in such a way that the real and personal property of the corporation shall be listed and assessed as other property, and the difference between the aggregate of the real and personal property and the value of the capital stock assessed as corporate excess. Since this statement is required to be given to the assessor, (in the last amendment, to the State Tax Commissioner) it is clearly to be inferred that it is to be rendered during the assessment period and is to reflect the condition of the corporation in the matters required to be stated as of the assessment date, April 1st. It would seem, therefore, to be clear that such a state-

ment would not reflect the amount of the "capital employed" by the corporation during the course of a year or other period and much less would it reflect the amount of the "capital employed" in any particular locality. Such a statement is adapted to the ascertainment of a so-called "corporate excess" value as of the date of the assessment, and aside from this it is of little significance and less aid to the assessor or commissioner. This court has said that the section was applicable alone to the assessment of domestic corporations, companies and associations, State ex rel. Farmers State Bank v. Wallace, 48 N. D. 803–808, 187 N. W. 730; and we see no occasion to depart from this holding. In fact, the legislature itself has expressly recognized this limitation by providing in the last amended act, Chapter 305 of the Laws of 1923, for a statement from each *domestic* corporation, joint stock company," etc. It is certain that the value which the legislature directed to be ascertained in the manner indicated in this section is in no way related to the so-called "capital employed" by the defendant corporations in the assessment proceedings involved here. It will be observed that counsel treat "capital employed" as being measured in some degree by the quantity of merchandise shipped in and sold. Yet, under § 2110, Comp. Laws 1913, as it originally stood and as amended, a domestic corporation would be liable for assessment of its full corporate excess, though it did not employ a dollar of its entire capital within the state and though it owned no property here. In the Cream of Wheat Company case, supra, this situation was strongly urged as a reason why this state could not tax the corporate excess of the Cream of Wheat Company, but the power and jurisdiction to reach it was vindicated against this attack on the ground that it was a domestic corporation and liable to taxation on its intangible personalty according to the law of the state of its domicile. Grand Forks County v. Cream of Wheat Co. 41 N. D. 330, 170 N. W. 863, id. 253 U. S. 325, 64 L. ed. 931, 40 Sup. Ct. Rep. 558. Obviously, a statute which is designed, primarily or exclusively, to reach the entire corporate excess of a domestic corporation without regard to where its business is transacted or capital employed, would be poorly adapted to reach only that portion of the corporate excess of a foreign corporation which may be attributable to the transaction of business within this state. It is the claim of the respondents that the use of the formula contained in § 2110

could not, as to foreign corporations, result in ascertaining any value that the taxing authorities of this state would have authority to assess. This is clearly correct because the only possible result would be the value of the corporate excess as an entirety. Jurisdiction to tax such value is necessarily dependent upon jurisdiction over the corporation as a whole. Appellant's counsel have been unable to point out any other statute under which any such valuation could be reached, apportioned or allocated. If appellant's position be correct, the legislature has carefully prescribed a formula to be followed by the state tax commissioner (Comp. Laws 1913, § 2110, Session Laws 1923, chap. 305), in valuing the excess of domestic corporations, and has localized the valuation at the principal place of business; but with respect to foreign corporations, in a matter of some legal delicacy and of infinitely greater practical difficulty, it has imposed the similar task upon thousands of local assessors without a particle of legislative direction. It must be remembered that the attempted tax is justified as being imposed upon "capital employed" which is measured somewhat according to sales or business done. This, of course, would extend into practically every taxing district of the state. Upon argument it was conceded that this could not be localized at the places where warehouses or agencies were maintained. In fact, the tax for which the appellant contends is in the nature either of a sales tax, which has never been authorized by the legislature, or of a capital stock tax. The latter tax was for a time authorized by chapter 222 of the Laws of 1919, but was repealed by chapter 302 of the Laws of 1923. It is not contended that the defendant corporations had not been taxed upon their real and personal property within the state on April 1st of each year to the same extent as other individuals and corporations. In the absence of any legislation directing taxing officers to lay additional taxes upon some other species of property or upon privileges that may be enjoyed here by foreign corporations, we can see no justification for proceedings such as those in the instant case.

The judgment of the lower court is right and it is affirmed.

BRONSON, Ch. J., and NUESSLE, JOHNSON, and CHRISTIANSON, JJ., concur.