[File No. 6822]

IN THE MATTER OF THE ESTATE OF J. ALBERT McKEE, Arne Melby, Administrator with the Will Annexed, Respondent, v. STATE OF NORTH DAKOTA, John Gray, as Tax Commissioner of the State of North Dakota, and Dickey County, Appellants.

(3 NW(2d) 797)

Opinion filed March 24, 1942

*Alvin C. Strutz,* Attorney General, *C. E. Brace,* Assistant Attorney General, and *T. A. Thompson,* for appellants.

*Hugo P. Remington,* for respondent.

Burr, Ch. J. This case involves the interpretation of § 3, subdivision 2 (B) of chapter 251, Session Laws of 1933, which provides that in determining the amount of tax imposed upon the transfer of the net estate of every decedent, exemption from taxation is allowed to the extent of: "The amount of all bequests, legacies, devises, or transfers, except bona fide sales for an equivalent monetary consideration in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death; *to or for the use of any public institution, for exclusively public purposes, or for any charitable, educational or religious purposes, or to or for the use of any corporation, institution, society, or association, whose sole object and purpose is to carry on charitable, educational or religious work. . . .*"

The specific question presented is the interpretation of the portion which is underlined.

To clarify the situation, we refer to some of the facts in the case. J. Albert McKee, a resident of this state, made bequests to the following corporations: National Jewish Hospital, Methodist Episcopal Board of Foreign Missions, and the Michigan University Religious Association.

It is not denied that these bequests are to be, and will be, used exclusively for charitable, educational, or religious purposes, which is the sole object and purpose of the corporations, and also that these bequests go to institutions outside of the state of North Dakota, the beneficiaries being foreign corporations.

The county judge ruled that in determining the net value of the estate for tax purposes, such bequests could not be deducted. The district court reversed, and from this decision the tax commissioner appeals.

Under the provisions of paragraph (2) of § 2 of the law involved, "the value of the net estate shall be determined by deducting from the value of the gross estate" certain exemptions; and the exemption sought in this case is the one heretofore set forth.

"Laws which exempt property from taxation will receive a strict construction." Engstad v. Grand Forks County, 10 ND 54, 56, 84 NW 577. Appellants urge that the administrator must show he has the right under this statute to deduct from the gross value of the estate the amount of the bequests set forth in this will; and urges that under proper construction of the law, "bequests to foreign religious or charitable organizations operating wholly without this state are not exempt."

The law levies no tax upon the legacy or the bequest. The exemption is not based upon the locality of the receiver or the place of distribution. The tax is placed upon the estate in North Dakota. In the great majority of cases, the legatee would not be concerned with such a tax. If it were a case where the imposition of the tax might affect the amount of the legacy, owing to the lack of assets, being a residuary legatee, or some such condition, then the legatee would be concerned with the levying of the tax. The exemption is granted the estate because of the interest which the testator had in charitable enterprises. If he desires to give part of his estate to an institution or person for purely charitable, religious, and educational purposes, then the estate

does not pay any tax thereon; unless we construe the law as appellant contends.

Much emphasis is laid upon public policy; but the public policy of the state of North Dakota is determined by its own legislature. As this court said in Chaffee v. Farmers' Co-op. Elevator Co. 39 ND 585, 593, 168 NW 616, 618, "Public policy is but the manifest will of the state . . . which must and does vary with the habits, capacities, and opportunities of the public. . . . And when the legislature has spoken and enacted a law embodying a certain principle, the policy is determined. And the courts are not concerned with the wisdom or expediency of the legislation or policy adopted, but are merely concerned with the interpretation of the law for the purpose of ascertaining the intent of the legislature."

We have also shown there is no room for rules of construction where the words of the statute are plain and unambiguous. In such case, "It is not the duty of this court to legislate nor to search for a hidden meaning of plain and hitherto unambiguous words employed by the legislature. We are not free to enter into the realm of speculation. . . . The duty of the court ends when it determines the legal meaning of the words employed. If the words are not ambiguous there is no room for construction." See State of North Dakota ex rel. Farmers State Bank v. Wallace, 48 ND 803, 811, 187 NW 728, 732.

If the language of the statute be such as to raise difficulties in ascertaining the legislative intent, then the history of such taxation in this state might become persuasive.

Respondent lays stress upon the apparent development of exemptions from inheritance taxes as shown by legislation. In 1917 the legislature enacted chapter 231, providing for the taxation of inheritance, bequests, and legacies, and therein made provision for certain exemptions, providing by subdivision 1 of § 4 of the Act that "all property transferred . . . to *corporations of this state* organized under its laws solely for religious, charitable, or educational purposes, *which shall use the property* so transferred exclusively for the purposes of their organization *within the state* shall be exempt."

When this chapter was amended by chapter 225 of the Session Laws

of 1919, these provisions for exemptions, confined within narrow bounds, were incorporated verbatim.

In 1927 the legislature repealed the laws dealing with taxes on inheritances, and substituted an entirely new system of legislation, chapter 267, known as the "Estate Tax Act;" and while the title states that the Act was intended also "to Establish a Tax on Gifts, Legacies, Inheritances," etc., it is clear from the Act that no longer was a tax levied upon the legacy or the bequest, but the tax is levied upon the "net estate" of the decedent. This statute provides for the determination of the "gross estate of the decedent," and then proceeds to levy a tax "upon the net estate." In § 3, the Act provides how this net estate shall be determined. This section permits such an estate an exemption from taxation to "The amount of all bequests, legacies, . . . to or for the use of the United States, District of Columbia, or any public institution, for exclusively public purposes, or for any charitable, educational or religious purposes, or to or for the use of any corporation, institution, society or association, whose sole object and purpose is to carry on charitable, educational or religious work. . . ."

The legislature was familiar with the distinction between an inheritance tax and an estate tax. In the various inheritance tax statutes which had been enacted, there had been a broadening of the terms of the exemptions. At first, the exempt transfers to such corporations had two limitations—first, the corporation must be a corporation organized under the laws of this state; and, second, "the property so transferred" must be used "exclusively for the purposes of their organization within the state."

Heretofore, there had been no exemption allowed because of bequests to the United States or to the District of Columbia. But when the legislature saw fit to abolish the inheritance taxes, and to levy an estate tax instead, it still made it part of the public policy of the state to grant to the estate certain exemptions. It provided that the amount of bequests to the United States or to the District of Columbia could be deducted from the gross estate in order to determine the amount of the estate to be taxed. It also removed, in its legislative wisdom, the restrictions on corporations which had been laid in the inheritance taxes, and now permitted the representative of the estate to deduct the

amount of all legacies and transfers made by the testator to any corporation, institution, society or association, whose sole object and purpose was to carry on charitable, educational, or religious work. The legislature did not say that such corporation must be one organized under the laws of this state, nor did it say that the proceeds must be expended in the state.

Appellants, however, urge that we must read such idea into the exemption; or, putting it this way, they urge that because the law does not state specifically that a foreign corporation is included, or does not state specifically that the money may be expended beyond the confines of the state, therefore, we must construe the public policy as meaning the legislature intended the corporation referred to must be a domestic corporation, and that the money must be expended entirely within the state.

Appellants cite the language of the note in 34 ALR 681, dealing with exemption from taxation of gifts to charitable organizations, and call our attention to the decisions dealing with an exemption as "affected by geographical field of operation."

In these decisions, the courts are dealing with statutes levying an *inheritance* tax, a tax upon the receiver of the legacy or bequest. The note states: "While there is somewhat of a division of authority on the question whether a gift to 'a foreign charitable corporation is within the meaning of the exemption granted to gifts to charitable institutions, the majority of the courts hold that such exemption extends only to domestic corporations, and not to foreign corporations."

It is the holding in these cases cited that where the statute exempts such an inheritance or legacy to a corporation from taxation, the exemption is granted to a state corporation only. The exemption is to the corporation, no matter where the legacy may be used. It may be a state corporation engaged in charitable or religious or educational work outside of the state, but the exemption is granted to it because it is a resident of the state. If the exemption confined itself to money that was to be used solely within the state, then, of course, that would be a condition which would have to be met before the exemption would apply.

Appellants rely on the case of People v. Woman's Home Missionary

Soc. 303 Ill 418, 135 NE 749. The law involved therein is identical with § 388e, page 1985, of the Illinois Revised Statutes of 1911, and with § 388e, page 2243, of the Revised Statutes of 1915–1916, and is verbatim the amendment to the 1895 Law as set forth in the Laws of Illinois for 1901 at pages 268, 269.

In going back to the original statute of Illinois, the Act of June 15, 1895, we note in § 1 of the Act that "all property, real, personal and mixed which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of this state or, if decedent was not a resident of this state at the time of his death, which property or any part thereof shall be within this state or any interest therein or income therefrom" to any person—body politic or corporate in trust—was subject to a tax; but § 2 of the Act exempted a life estate in any property devised or bequeathed to the wife of the testator.

In 1901 the Illinois legislature amended § 2 by the amendment set forth at pages 268 and 269 of the 1901 Session Laws, and thereafter this was known as § 2½ of the Laws of 1895. This § 2½ of the amendatory Act of 1901 was, as set forth in the Illinois case cited, "adopted for the purpose of relieving certain devises and bequests or gifts from the operation of the original act." The court held the public policy of Illinois determined that in so far as corporations were concerned, such exemption was for the benefit of a domestic corporation. Nothing was said as to whether the exemption was available to a "trustee, bishop or minister of any church," in case he was a nonresident. The theory in the Illinois case cited that the exemption applied only in favor of domestic corporations, or was not granted to foreign corporations, is that such an Act "must be held to apply only to corporations created under the authority of this state and over which this state has the power of visitation and control, unless the intent that the act shall apply to other than domestic corporations is plainly expressed in the terms of the act." 303 Ill 420, 135 NE 750.

It will be noted that this Illinois case is a tax on the legacy and not an estate tax.

It is urged by appellants that the court must not lose sight of the fact this is an estate tax and not an inheritance tax; and argue there-

from that because the legislature may have widened the scope of exemption under inheritance taxes, there is no reason to assume that it had the same purpose with reference to the estate tax. We cannot see any validity in this distinction. The legislature for years had limited the exemptions that were deductible to bequests that were to be expended within the state. It changed this policy. It adopted a broader public policy. It was familiar with the argument in support of state boundary limitation, and when it removed that limitation, it must be presumed to have intended that such limitation would no longer apply to exemptions.

As said in Eversole v. Eversole, 169 Ky 793, 795, 185 SW 487, 489, LRA1916E 593, "the public policy of a state is determined by its constitution and statutes, and, where these are silent, by the decisions of its courts. . . . Hence, when the legislature speaks within the limits of the constitution its declaration of public policy is conclusive. If a change in that policy is desired, application must be made to the legislature and not to the judiciary, whose function it is to declare the law, but not to make it."

In Harvard College v. State, 106 Ohio St 303, 140 NE 189, the court is construing a tax authorized by § 7, article 12 of the Constitution as amended in 1912. The first issue was whether this was an inheritance tax or an estate tax. The court construed the law to be a tax upon an estate rather than upon the inheritance; and the question then was whether, under the statutes of Ohio, the exemption would apply to a public institution of learning outside of the state. Section 5332 of the General Code provides the levy of the estate tax would "not apply to property, or interests in property . . . embraced in a bequest . . . for the use of . . . public institutions of learning, or to or for the use of an institution in this state for purpose only of public charity or other exclusively public purposes. The property, or interests in property so transmitted or embraced in such devise, bequest, transfer or conveyance *shall be exempt* from all inheritance *and other taxes* while used exclusively for any of such purposes."

The court held that while the law, in its application to "public charity or other exclusively public purposes," exempted only the property that went to the use of an institution in Ohio, yet property that went

to "public institutions of learning" was not limited in exemption to institutions in Ohio, stating, "The clause: 'Public institutions of learning' . . . embraces institutions located within or without the state." In the opinion, the court says, "By grammatical construction, punctuation and juxtaposition institutions embraced under the clause 'public institutions of learning' are not confined to those located in this state. To so hold would be to give the clause a construction in violation of its plain import, and to attach to it a judicial construction not warranted by the statute."

Such language is applicable to the case here, for we are asked to read into the statute that the legislature meant to exempt only such portions of the estate as were bequeathed to domestic corporations, on the theory that if the legislature had intended the exemption to be broader in its terms, then it would have stated in some form or another that the exemption was to apply to institutions wherever they were, and not having so stated, it would be presumed the exemption would apply only to institutions within the state, under the rule that the right to exemption must be construed strictly against the one claiming the exemption.

To so hold this as the intent of the legislature, we would have a case where the legislature, when dealing with inheritance taxes, eliminated the expression, "within the state," as a limitation upon exemptions, and thus expressed an intent to broaden exemptions; but when it adopted the policy of placing the tax upon the estate, instead of on the bequest, and still continued to use the broader language, it intended thereby to limit the exemption to domestic institutions who spent their money within the state, because of failure to mention foreign corporations.

When it was the policy of the state to limit tax exemption to inheritances or legacies to be spent within the state, it so stated. It would have been unnecessary to have so stated if the policy were as appellants urge. When, by subsequent amendments, the legislature broadened the exemption so as to extend the exemption to all legacies of a certain character, wherever spent, it was plain that the broader intention was expressed by the omission of the limitation, and such omission cannot be kept in force by construction. Stewart v. Kahn (Stewart v. Bloom) 11 Wall.(US) 493, 502, 20 L ed 176, 178. The intent of the legisla-

554

ture is expressed by omission as well as by inclusion. Re Cravens, 177 Minn 437, 225 NW 398; Ex parte Hoese, 48 SD 337, 340, 204 NW 174, 175 (quoting from 25 RCL 1065).

The legislature was familiar with these rules, and when it abandoned the principle of levying a tax upon the inheritance, and adopted the rule of levying the tax upon the estate, it adopted the exemption from taxation which experience had suggested to the legislature to be the proper one; that is, the estate tax would be levied upon the net value of the estate after deducting the amount of the legacies and bequests that were given to any institution or person or organization engaged solely in the work set forth in the exemption. It made no attempt to levy a tax upon this legacy. The testator, a resident of the state, was permitted to dispose of a portion of his estate by donations to that type of work; and if he did so, the state would levy a tax upon the remainder of the estate only.

The supreme court of Washington was called upon to construe a statute which provided that "All bequests . . . of property within this state when the same is for . . . the relief of the aged . . . maintenance of sick . . . support or education of orphans . . . shall be exempt from the payment of any inheritance tax. . . ." In the case of Philadelphia v. State, 118 Wash 644, 204 P 596, the court held that such exemption applied to a bequest of property in the state of Washington which had been bequeathed to the city of Philadelphia for the purpose indicated. Again, in Re Hunter, 147 Wash 216, 265 P 466, the court reaffirmed the doctrine.

The supreme court of California, in Chambers v. Princeton University, 178 Cal 116, 172 P 390, was required to construe the provisions of the inheritance tax law of the state, which granted exemption from inheritance taxes to "public corporations . . . or associations of any society, corporation, institution, or association of persons engaged in or devoted to" charitable purposes or work not for profit; and held that such language took in all corporations, whether foreign or domestic, holding: "It would seem to verge upon an absurdity to say that when the legislature used the word 'person,' it meant any person, resident or nonresident, of the state, but when it used the word 'corpora-

tion' in exactly the same connection and in the same sentence, it meant only domestic corporations."

Appellants place great stress upon the decision in the case of Griggs v. Thulemeyer, 41 Wyo 36, 282 P 27, wherein the court construed a statute which exempted from the inheritance tax "Gifts for State, Municipal, Charitable, Educational or Religious purposes or to any institution for use in the preservation of wild fowls or game," and held that such provision was intended to confine such gifts to domestic corporations and not to foreign corporations. After reviewing a large number of cases, the court reached the conclusion that "if the legislature in exempting charities from inheritance taxes intends to include foreign charities, it will make specific mention of them." Just why the legislature would make specific mention of foreign charities, when it, by the language used, exempted all charities, does not appear. The opinion seems to be based upon the theory that the history of the legislation disclosed that originally such charities were confined to the state, and that though subsequent legislation eliminated the language which confined, yet the presumption would be the legislature intended to retain it. In addition, the court seems to place great stress upon the fact that in the statute under consideration, the legislature exempted gifts "to any institution for use in the preservation of wild fowls or game," and reached the conclusion that the state must have, therefore, intended it to mean the wild fowl or game of Wyoming, for it was all in the same statute, and, therefore, "To say that the legislature intended to favor gifts for the benefit of foreign states and cities, or to protect wild game, in Africa perhaps, would border on the absurd." But this assumption could well be confined to the "institution" for the preservation of game.

The language of our statute is quite plain. It permits the administrator to deduct from the gross value of the estate "The amount of all bequests . . . for any charitable, educational or religious purposes, or to or for the use of any corporation . . . whose sole object and purpose is to carry on charitable, educational or religious work. . . ." It makes no pretense to limit the place of this work. It does not confine the locality to this state. The philanthropic interests of American citizens have never been confined within geographical limitations. In innumerable instances the state has been the beneficiary

of such bequests from outside sources, and the citizens of the state have been liberal in making similar donations.

It has always been the proud boast of the people of the United States that their sympathies and charities are world-wide; they are not bounded by a narrow horizon; and the people of this state knew that a great deal of the religious and charitable and educational work of the state had been carried on by such kind of contribution from without the state. There is nothing to indicate that the legislature intended to take a narrow, selfish, circumscribed view of philanthropy and charity. Within the limits specified by the statute, the testator was permitted to dispose of some of his property to such purposes, and in such case the remainder of the estate devoted to other purposes would be required to pay the tax. The legislature well knew that charitable instincts are more concerned with the nature of the work that is being carried on than the locality, and that when a certain locality is to be the beneficiary, it is always well defined. There is nothing in the statute to show that it was the legislative purpose to so curb generosity as in effect to put a penalty upon its exercise.

The language of the statute is unambiguous, and the decision of the lower court is affirmed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.