John G. GRENZ, for himself and for the Benefit of Irene Grenz, heirs at law of Gene J. Grenz, deceased, Plaintiff and Respondent,

v.

William J. WERRE and Curtis Werre, Defendants and Appellants.

No. 8105.

Supreme Court of North Dakota.

July 13, 1964.

Breidenbach & Milhollan, Bismarck, for plaintiff and respondent.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, and Gordon O. Hoberg, Napoleon, for defendants and appellants.

KELSCH, District Judge.

The plaintiff brought this action, for himself and for the use and benefit of his wife and three children, against the defendants, to recover damages for the wrongful death of his son, Gene J. Grenz, who was killed while riding as a guest in an automobile driven by Curtis Werre.

The plaintiff claims, in substance, that on the 22nd day of May, 1962, the defendant Curtis Werre, while accompanied by the de- cedent and one Delzer, was driving his father's 1957 Chevrolet sedan with his knowledge and consent upon a public highway in the vicinity of Napoleon; that he drove in an easterly direction toward Burnstad, in a grossly negligent manner and at an excessive rate of speed, so as to cause said automobile to swerve out of control into the north lane and collide with a car proceeding in a westerly direction on said highway, as a result of which Gene J. Grenz was instantly killed.

The defendants in their joint amended answer deny that Curtis Werre was guilty of any negligence; claim that the negligence of the driver of the other car was the proximate cause of said collision, and, for a further defense, claim that the decedent and Werre were engaged in a joint venture and that he assumed the risk thereof and that the decedent was guilty of contributory negligence.

Upon the trial of the case, after the plaintiff rested, and again at the close of the entire case, the defendants moved the court for a directed verdict and for a dismissal of the action. Plaintiff resisted both motions and the trial court denied the same.

The case was tried to a jury and the jury returned a verdict in favor of the plaintiff for $9,764.63. Judgment was entered thereon accordingly. Thereafter the defendants moved the court for judgment notwithstanding the verdict, or for a new trial. The trial court denied both of said motions, and the defendants have appealed to this Court from both said judgment and order.

The appellants rely upon the insufficiency of the evidence to sustain the verdict, and several errors of law, for a reversal of said judgment and order. They claim, in substance:

1. That the evidence is insufficient to prove that Curtis Werre was guilty of gross negligence or wilful misconduct;

2. That the negligence of Curtis Werre, if any, was not the proximate cause of said automobile collision;

3. That the trial court erred:

(1) In admitting: (a) the report card; (b) the athletic awards; (c) pictures; and (d) wearing apparel of the deceased, in evidence; and

(2) In admitting plaintiff's exhibit # 2 in evidence, showing skid marks upon the highway, without a proper foundation having been laid showing: (2) that it was drawn to scale; (b) that the measurements it contained were reasonably accurate; and (c) that it was a true representation of the conditions that existed immediately after said collision occurred.

4. That the court erred:

(1) In excluding testimony of Dr. Buckingham, offered by defendants to show Curtis Werre was suffering from amnesia or loss of memory, at the time of the trial; and

(2) In excluding testimony offered by the defendants to prove that the reputation of Curtis Werre, for careful driving, was good at the high school he attended.

5. That the trial court erred in instructing the jury: "Members of the jury, the court instructs that a pecuniary loss need not be established by proof in dollars and cents. A substantial loss will be presumed."

6. That the jury, in returning a verdict for plaintiff, after it had found that Curtis Werre was not guilty of gross negligence, was guilty of misconduct.

7. That the verdict of the jury is contrary to the evidence and law applicable thereto; and

8. That the trial court committed prejudicial error in denying appellants' motion for judgment notwithstanding the verdict or for a new trial.

Manifestly appellants' first two specifications involve substantially the same evidence. They present questions of the sufficiency of the evidence to sustain the verdict.

To determine these questions we must review and consider the sufficiency of the evidence in the light of certain well-established rules of law.

■ (1) That the questions of gross negligence, contributory negligence, proximate cause and assumption of risk are questions of fact for the jury, unless the evidence is such that reasonable minds can draw but one conclusion therefrom, when it becomes a question of law for the court. Erdahl v. Hegg, N.D., 98 N.W.2d 217; Cose v. Towner County, N.D., 102 N.W.2d 538; King v. Railway Express Agency, N.D., 107 N.W.2d 509; Bauer v. Kruger, N.D., 114 N.W.2d 553; Borstad v. La Roque, N.D., 98 N.W.2d 16.

■ (2) That where there is a sharp conflict in the evidence relating to any material issue of fact, the verdict of the jury will not be disturbed on appeal. Ostmo v. Tennyson, 70 N.D. 558, 296 N.W. 541; Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916; Killmer v. Duchscherer, N.D., 72 N.W.2d 650; Stokes v. Dailey, N.D., 85 N.W.2d 745.

■ (3) That in determining the sufficiency of the evidence to sustain the verdict, the evidence must be viewed in the light most favorable to plaintiff. Smith v. Knutson, 78 N.D. 43, 47 N.W.2d 537; Doll v. Treiber, N.D., 76 N.W.2d 910; Vaux v. Hamilton, N.D., 103 N.W.2d 291.

■ (4) That the credibility of the witnesses and weight to be given to their testimony are questions of fact for the jury to determine. Klundt v. Pfeifle, 77 N.D. 132, 41 N.W.2d 416; Stokes v. Dailey, supra; Fisher v. Suko, N.D., 111 N.W.2d 360.

■ (5) That in considering a specification that the verdict of the jury is contrary to the evidence, the court will assume the

truth of the version of the evidence which tends to support the verdict. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Lusty v. Ostlie, N.D., 71 N.W.2d 753.

Bearing these rules in mind, we find that the only substantial dispute in the evidence relates to the manner in which the collision occurred.

The record shows that on the 22nd day of May, 1962, William J. Werre resided with his family in the city of Napoleon; that he was the owner of a 1957 Chevrolet sedan which he kept and maintained as a family car; that his son, Curtis, who was a little over 17 years of age, had his father's permission to drive said car for pleasure purposes; that during the evening of said day, while Curtis was driving his father's car with his knowledge and consent, he met the decedent and one Allen Delzer in the city of Napoleon; that the three decided to drive to Burnstad, leaving Napoleon about a quarter of ten P.M., all three riding in the front seat, Grenz on the outside and Delzer in the middle. They drove south on State Highway #3 about 8 miles, and then turned east toward Burnstad on a farm-to-market road which had been recently built over a rolling terrain, having a hard gravel surface and deep ditches on both sides. The night was dark and it was drizzling, his visibility was limited, and the graveled surface of the road was quite wet. The brakes, lights and windshield wiper on the Werre car were in good working condition. That while Werre and his companions were traveling east on said highway, one Kenneth Wagner was driving a 1959 Ford sedan in a westerly direction on the same road, accompanied by one Robert Liversage and their girl friends.

Curtis Werre claimed that he did not see the Wagner car until he reached the crest of the hill and that a collision occurred seconds later; that he did not know where or how the collision occurred, but remembered:

(1) That he was driving on low beam;

(2) That he had no trouble in controlling his car;

(3) That he looked at the speedometer occasionally; and

(4) That he was only going about 50 to 55 miles an hour as he approached the place of collision. (The record shows, however, that Werre's claim as to the rate of speed he was going was contradicted by both the patrolman and the State's Attorney who testified, in effect, that Werre had admitted to them, shortly after the collision happened that he was probably going from 60 to 65 miles an hour as he approached the scene of the accident.)

The patrolman took several photographs at night, shortly after the collision occurred, some were taken before and others after the cars were moved, and some were taken in the afternoon of the following day. They established, in substance:

(1) That the main point of impact on the Werre car was on the right front side and corner, while the Ford was damaged clear across the front and right front side thereof;

(2) That the radiator, hood, headlights and front fenders on both cars were completely smashed;

(3) That the Werre car came to rest in the middle of the road, facing in a slightly northwesterly direction;

(4) That the major portion of the Ford came to rest in the north lane, a few feet to the east of the Werre car, facing in a slightly northeasterly direction;

(5) That there was a spot in the middle of the north lane, showing where the oil and radiator fluid had been spilled;

(6) That most of the glass and other debris was found in the north lane;

(7) That three faint tire or skid marks, about 75 feet in length, began near the center of the road and extended over into the

north lane where the Werre car came to rest.

The jury, in considering all of the testimony and photographs received in evidence, could well have believed, inferred and found, that the night was dark and it was drizzling; that the road was wet; that Werre was driving from 60 to 65 miles an hour, or at a rate of speed greater than was reasonably safe under the existing road and weather conditions; that he voluntarily directed his attention elsewhere than to the highway upon which he was driving; that as a proximate result of his inattention he found himself in a position of peril as he reached the crest of the hill; that he stepped on his brake, causing his car to skid out of control into the north lane and crash head-on into the oncoming car; that Werre's account as to how the collision occurred was unreasonable, improbable and inconsistent with the physical facts, and as such was unworthy of belief and credence.

■ Manifestly, this evidence was sufficient to warrant the jury in finding as a fact that Curtis Werre was guilty of gross negligence which proximately caused the death of Gene J. Grenz. Section 1–01–07, NDCC; Bolton v. Wells, 58 N.D. 286, 225 N.W. 791; Rubbelke v. Jacobsen, 66 N.D. 720, 268 N.W. 675; Rokusek v. Bertsch, 78 N.D. 420, 50 N.W.2d 657; Rettler v. Ebreck, N.D., 71 N.W.2d 759; Ledford v. Klein, N.D., 87 N.W.2d 345; Henke v. Peyerl, N.D., 89 N.W.2d 1; Sheets v. Pendergrast, N.D., 106 N.W.2d 1.

Therefore, where as here there is a serious conflict in the evidence as to how the collision occurred, and where the jury resolves the questions of gross negligence and proximate cause against the defendants, we consider the evidence in the light most favorable to plaintiff and adopt the version of the evidence which supports the verdict, and consequently the verdict of the jury will not be disturbed upon appeal.

We next consider appellants' claim that the trial court erred in admitting certain exhibits in evidence.

The record on this assignment shows:

(1) That a picture of the deceased, (Plaintiff's exhibit #34) and 8 report cards, (plaintiff's exhibit #36) were received in evidence without any objection thereto.

(2) That although there is testimony in the record that the deceased was a good athlete, that he participated in all high school sports and earned his letters, such letters or athletic awards were never offered or received in evidence.

■ It is elementary that an assignment of error in the admission of evidence will not be reviewed by this court unless proper and timely objection is made to the admissibility thereof, and that the admissibility of such evidence cannot be challenged for the first time upon appeal. McLain v. Nurnberg, 16 N.D. 144, 112 N.W. 243; Grant v. Jacobs, 76 N.D. 1, 32 N.W.2d 881; Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897.

■ (3) That plaintiff offered in evidence a jacket which the decedent wore the night he was killed, (plaintiff's exhibit. #35) to which counsel objected as not tending to prove or disprove any issue in the case. On due consideration of the entire record, we are satisfied that the trial court did not err in admitting said exhibit in evidence for the reasons:

(1) That demonstrative evidence, such as the jacket in this case, which tends to explain or prove any issue in the case is admissible. 32 C.J.S. Evidence § 607, p. 457; 20 Am.Jur., Section 716, p. 600; Jones on Evidence, 4th Ed., Vol. 2, Section 399, p. 752; Anno., 61 A.L.R.2d 1346.

(2) That the admission or exclusion of demonstrative evidence is addressed to the sound discretion of the trial court.

(3) That even if it be held that the trial court erred in admitting said exhibit in evidence, the burden nevertheless rests upon the appellants to show that the error complained of was prejudicial. This burden is not sustained by a showing of error

only. State v. Van Horne, 71 N.D. 455, 2 N.W.2d 1; Goodman v. Mevorah, 79 N.D. 653, 59 N.W.2d 192; Moe v. Kettwig, N.D., 68 N.W.2d 853.

In the absence of any claim that there was substantial change in the condition of the said exhibit and the presentation of a record showing that the error complained of was prejudicial, we conclude that this assignment of error is devoid of merit.

We turn next to appellants' claim that the trial court committed prejudicial error in receiving a plat, prepared by the highway patrolman, (plaintiff's exhibit #2) in evidence.

The record shows that the highway patrolman made an investigation of this accident about 11:45 P.M.; that he took a number of photographs that night and that he took some more during the afternoon of the next day, when he observed three faint tire or skid marks which began to the west of where the collision occurred and which he traced to the place where the Werre car came to rest. These skid marks are shown in the photograph (plaintiff's exhibit #11). The plat contained measurements of the highway, locations of the automobiles after the collision, location of the oil in the north lane, and the tire or skid marks here in issue. The patrolman admitted, on cross-examination, that he did not see these skid marks when he made his investigation the night before, and testified that he could not say that these skid marks were made by the Werre car.

Counsel for appellants objected to the admission of the plat only insofar as it related to the tire or skid marks which the patrolman placed thereon. Counsel claims that the admission of said exhibit was erroneous and prejudicial.

 We are of the opinion, upon this record, that the error, if any, in the admission of said plat was not prejudicial for the reasons:

(1) That the patrolman did not testify that these tire or skid marks were made by the Werre car, but only to what he observed upon the highway; and

(2) That evidence of these tire or skid marks was introduced before the jury, in the admission of the photograph, (plaintiff's exhibit #11) without any objection being made thereto by the defendants.

 It is well-settled in this State that evidence of tire or skid marks, made by an automobile involved in a collision, which can be traced from where the car was traveling to where the car came to rest, is admissible to establish how the collision actually occurred, where such tire or skid marks are observed within a reasonable time after the accident. The inference to be drawn therefrom and the weight to be given thereto is solely the province of the jury. Olson v. Wetzstein, 58 N.D. 263, 225 N.W. 459; Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282; 8 Am.Jur.2d, Section 689, p. 239; and Anno., 32 A.L.R.2d 112.

We are satisfied that the error complained of, if any, was cured by the admission of plaintiff's exhibit #11, and was therefore not prejudicial. Hilloboe v. Warner, 17 N.D. 594, 118 N.W. 1047.

We consider now appellants' claim that the trial court committed prejudicial error in excluding the expert opinion of Dr. Buckingham, which they offered to prove that Curtis Werre was suffering from amnesia or loss of memory at the time of the trial.

The record shows that the doctor examined Curtis Werre the day following the accident, in St. Alexius Hospital, at which time Curtis Werre claimed that he was suffering from back and neck pains, but he found that his physical injuries were only of a minor nature. He admitted, on cross-examination: (1) That he did not examine Curtis Werre to determine whether he was suffering from amnesia; (2) That there are certain recognized medical tests that can be made to determine if a patient is in fact suffering from a genuine loss of memory; (3) That he made no such

tests of said patient; and (4) That without the making of such tests he could not express an expert opinion, based upon a medical probability or medical certainty, as to whether or not Curtis Werre was, in fact, suffering from amnesia at the time of the trial.

Counsel for plaintiff made proper and timely objection to the expression of a medical opinion based upon mere medical possibility. The trial court sustained the objection.

■ We have held that a medical expert is qualified to express an opinion as to medical probability or a medical certainty, but not an opinion based on a mere medical possibility. Vaux v. Hamilton, N.D., 103 N.W.2d 291.

We have here a record where a driver remembers: (1) That he had his lights on low beam; (2) That he had no trouble in controlling his car; (3) That he looked at the speedometer occasionally; and (4) That he was only going 50 to 55 miles an hour as he approached the scene of the collision; but he could not remember what he saw or did, whether he was proceeding in the south lane, and how or where the collision in which he is involved occurred. Hence the jury could have concluded that he remembered the things that were advantageous to his defense but could not remember those that might have been prejudicial.

It is the imperative duty of a driver to keep a proper lookout, to see that which is plainly visible, to drive at a rate of speed that is reasonably safe under existing road and weather conditions, to have his car under proper control, and to exercise ordinary care for his own safety and the safety of others lawfully upon the highway.

■ We are, therefore, constrained to hold that the testimony of a driver who claims that he is suffering from amnesia or loss of memory should be closely scrutinized, especially where, as here, there is no proof that he sustained any serious head injuries, that he was unconscious, or that he sustained some other injury which, in the opinion of a qualified expert, would probably cause the loss of memory of which he complained.

■ We conclude therefore that the exclusion of the proffered expert's opinion, based on mere medical possibility, was not prejudicial error. Nevarov v. Caldwell, 161 Cal.App.2d 762, 327 P.2d 111.

Next, appellants claim that the trial court erred in excluding certain testimony which they offered to prove that Curtis Werre had a reputation for being a careful and cautious driver, at the high school which he attended at Napoleon.

It is a general rule that evidence offered to show that a motorist had a reputation for being a good, careful and cautious driver is not admissible to prove that he was not guilty of gross negligence at the time the collision in issue occurred. Knoepfle v. Suko, N.D., 108 N.W.2d 456; Slack v. Joyce, 163 Wis. 567, 158 N.W. 310; Hamilton v. Boyd, 218 Iowa 885, 256 N.W. 290; Ryan v. International Harvester, 204 Minn. 177, 283 N.W. 129; Holberg v. McDonald, 137 Neb. 405, 289 N.W. 542; Gerhard v. Terminal R. R. Ass'n., Mo., 299 S.W.2d 866; Blashfield's Cyc. of Auto. Law, Section 6190, Vol. 9C, p. 296.

■ Applying this rule of law, we conclude that the trial court did not err in excluding the evidence offered to establish that Werre's reputation for driving was good.

We next consider appellants' assignment of error that the instruction given by the trial court, set out herein, was erroneous and prejudicial.

Counsel strenuously contend that the instruction given misled and misdirected the jury by inducing the jurors to believe:

(1) That the law presumes that the plaintiff sustained substantial damages;

(2) That they had a right to award substantial damages to plainiff, without proof, because the instruction relieved the plaintiff of that burden.

It may be that the instruction complained of, when standing alone or considered by itself, might be erroneous, but it is a salutary rule in this State that, "[t]hough an instruction standing alone may be insufficient or erroneous, it must be considered in connection with the remainder of the charge; and if the whole charge, taken together, correctly advises the jury as to the law, the error, if any, is thereby cured." Ferderer v. North P. Ry. Co., 77 N.D. 169, 42 N.W.2d 216; Froh v. Hein, et al., 76 N.D. 701, 39 N.W.2d 11; Hoffer v. Burd, et al., 78 N.D. 278, 49 N.W.2d 282.

Applying this test, we examine the instructions given by the trial court pertaining to the measure of damages, to consider the same in their entirety.

The trial court, after stating the law applicable to actions for the recovery of damages in wrongful death actions, instructed the jury:

(1) "In arriving at the amount of damages the plaintiff is entitled, you are instructed that the damages, if any, must be limited to such sum of money as you may deem fair and just compensation for the net pecuniary loss, if any, which you may believe from a preponderance of the evidence they have necessarily sustained by reason of the death of Gene J. Grenz.

(2) "The net pecuniary loss, if any, sustained is equivalent to the pecuniary benefit, if any, which might reasonably be expected from the continuation of his life, less the cost of properly and suitably maintaining and educating him.

(3) "Members of the Jury, although no exact definition of pecuniary loss can be given as it's meaning may vary with the circumstances of each case, monetary loss is not the equivalent for pecuniary loss. Neither is pecuniary loss necessarily confined to the minority of a child. A parent has a right to recover for services that might reasonably be expected from a child after majority.

(4) "You are instructed that pecuniary loss need not be established by proof in dollars and cents. A substantial loss will be presumed."

We set out the principles of law applicable to actions for the recovery of damages occasioned by the wrongful death of a minor in Henke v. Peyerl, N.D., 89 N.W.2d 1. We find that when the instructions given by the trial court are tested by these principles and considered as a whole, they are correct statements of the law applicable to the measure of damages and burden of proof.

Where, as here, prejudicial error in an instruction is claimed, we consider the evidence before the jury, as well as the specific language used by the court, to determine whether the instruction complained of was in fact prejudicial to the defendants. Rott v. Provident Life Ins., 69 N.D. 335, 286 N.W. 393.

Considering then the evidence offered to prove the damages which plaintiff sustained, the record shows, without dispute, that Gene J. Grenz was nearly 17 years of age; that he was physically strong and sound in body and mind; that he was a bright and intelligent young man; that he was a good student, his grades were better than the average and his quotient test was 105 or above the average; that he was a good athlete and participated in all high school sports and earned his letters there; that he was a young man of clean habits, he did not smoke or drink; that he was cooperative, dependable and obedient; that he was a good worker, that he helped his

mother do chores around the house after school hours and that he assisted his father on the farm on weekends and during two summer vacations; that he worked on the farm, raked and hauled hay with a tractor, filled the drill with grain for seeding, cleaned and polished the automobiles, greased and repaired the farm machinery, hauled grain to bins and to the elevator with the truck, fed the cattle, repaired the fences, hauled rocks with the tractor, and did such other chores as were assigned to him by his father; that he was ambitious and planned to go to college after he finished high school.

Manifestly this evidence is much stronger, much more substantial, and more convincing in character than it was in the Henke case, where we sustained a verdict in favor of the plaintiff for $7,800.

Further, counsel for appellants strenuously insist that the verdict in this case is so high and excessive as to shock the conscience of the court or its sense of justice, and that it was the result of passion or prejudice. We find that this contention is unsound and untenable for the reasons:

■ (1) That the appellants made no claim that the verdict was so high and excessive as to be the result of passion or prejudice, in their motion for a new trial. This assignment of error was, therefore, not presented to or considered by the trial court in denying said motion. It is well-settled in this State that an appellant cannot claim for the first time on appeal that the verdict is too high or excessive. Schmidt v. Stone, 50 N.D. 91, 194 N.W. 917; Holmes v. Anderson, 50 N.D. 959, 198 N.W. 544.

■ (2) That in wrongful death actions, as in personal injury cases, there is no method by which damages may be computed with mathematical accuracy or precision. The amount to be awarded must necessarily be left, therefore, to the sound discretion, good sense and practical judgment of the jury. Lake v. Neubauer, N.D.,

87 N.W.2d 888; Anderson v. Schreiner, N.D., 94 N.W.2d 294.

These decisions are applicable to and decisive of appellants' contention on this issue.

We now proceed to a consideration of appellants' specification that the jury was guilty of misconduct.

This accusation is predicated on twelve affidavits, identical in form, one signed by each juror, wherein he states that, "the members of the jury were agreed that the defendant, Curtis Werre was not guilty of gross negligence, but felt that nevertheless the plaintiffs should recover something; that the jury was unable to decide how the accident did happen and, therefore, agreed that notwithstanding that fact, that we would award plaintiff $8000.00, plus $1764.63 for special damages."

Counsel for appellants argue strenuously that these affidavits show: (1) That the jury was guilty of misconduct in returning a verdict for plaintiff, after they found that Werre was not guilty of gross negligence; and (2) that these affidavits are competent and admissible to impeach the validity of their verdict; and (3) that if said affidavits are not admissible for either of said purposes, that then the court should at least consider the same in determining whether the defendants are entitled to a new trial.

Rule 59(b), N.D.R.Civ.P., insofar as here material, provides:

"The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"1. * * *

"2. Misconduct of the jury, and whenever any juror has been induced to assent to any general or special verdict or to a finding on any question

submitted to the jurors, by the court by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors."

The language of this Rule is clear and certain. It authorizes the use of jurors' affidavits for the impeachment of their verdict only in cases where their determination was arrived at by chance. The affidavits in issue establish beyond controversy that the jury did not arrive at its verdict in this case by chance.

The question then is, should the jurors be permitted to impeach their verdict, by their affidavits, where the facts sought to be shown inhere in the verdict itself?

We have considered similar questions in our prior decisions. In State v. Forrester, 14 N.D. 335, 103 N.W. 625, we said:

"The sole question presented, therefore, is whether the affidavit of jurors may be received to impeach a verdict duly rendered, recorded, and acted on. We agree that such affidavits should not be considered in such a case, and that this rule is sustained by the great weight of authority and by the better reason. It would greatly tend to unsettle verdicts if a juror be permitted to say, after it is too late to be remedied, that he did not understand the charge of the court. To do so would result in continual embarrassment and interminable controversy after trials, although a verdict had been duly and solemnly announced. It would subject jurors to constant annoyance by being called upon to state the occurrences of the jury room, which ought to be kept secret as well as privileged. It would subject jurors to influences by corrupt parties in an effort to have them impair their verdict after they had ceased to act as jurors. Although injustice may at times result from thus holding verdicts solemnly rendered unassailable by affidavits of jurors as to their not understanding the charge or as to their

reasons for agreements, we deem it the better rule, and subject to less liability to injustice, that a verdict actually rendered shall be conclusively deemed to be a verdict, and beyond impeachment by the declaration of a juror as to a mental condition existing when he agreed upon a verdict, or as to his reasons for so agreeing."

To the same effect see: Johnson v. Seel, 26 N.D. 299, 144 N.W. 237; Mikkelson v. Snider, 43 N.D. 416, 175 N.W. 220; Cohn v. Wyngarden, 48 N.D. 344, 184 N.W. 575; State v. Lindeman, 64 N.D. 518, 254 N.W. 276, 93 A.L.R. 1442.

Counsel for appellants concede the rule established by these decisions but maintain that they can be distinguished from this case for the reason that, in all of these cases only one or more affidavits were involved, while here all of the jurors have signed a similar affidavit, which proves that the jury either disregarded the evidence or the law given to it by the court and hence their verdict should not be permitted to stand. Counsel for appellants claim, in effect, that this record would justify the court in engrafting an additional exception to our rule, so as to permit the jury to impeach their verdict by unanimous affidavits or, if their use for this purpose is denied, the court should at least consider such affidavits in determining whether the appellants are entitled to a new trial. Counsel cite and rely upon the following decisions in support of their contentions: Ambrose v. Allen, 113 Cal.App. 107, 298 P. 169; Setzer v. Latimer, 40 Ga.App. 247, 149 S.E. 281; Troxell v. De Shon, Mo.App., 279 S.W. 438; Caylat v. Houston E. & W. T. Ry. Co., 113 Texas 131, 252 S.W. 478; Zunino v. Parodi Cigar Co., 106 Misc. 521, 176 N.Y.S. 319; King v. Ry. Express Agency, Inc., N.D., 94 N.W. 2d 657.

We have considered all of these decisions and are satisfied that they are not decisive of the issue here presented which involves the interpretation of our rule of

civil procedure set out herein. We have consistently held that courts have no power to legislate, to interpolate, or to read into a statute or rule, by judicial fiat, additional exceptions or provisions, to permit the use of the affidavits of jurors to impeach their verdict. State ex rel. Farmers' State Bank of Page v. Wallace, 48 N.D. 803, 187 N.W. 728; In re McKee's Estate, 71 N.D. 545, 3 N.W.2d 797; Johnson v. Fitzmaurice, N.D., 127 N.W.2d 497.

We are firmly convinced that it is imperative that we adhere to the rule established in our previous decisions, that affidavits of jurors cannot be used to impeach their verdict, except where it is arrived at by chance, if the legality, finality and sanctity of verdicts is to be preserved in this State.

This court's prior decisions are sound in principle, wise in policy, consistent with practical experience and sustained by the great weight of judicial authority. 53 Am. Jur., Section 1105, p. 769; 89 C.J.S. Trial § 523, p. 214; State by Lord v. Hayden Miller Co., 263 Minn. 29, 116 N.W.2d 535; Shipley v. Permanente Hosp., 127 Cal.App.2d 417, 274 P.2d 53, 48 A.L.R.2d 964; Kohrt v. Hammond, 160 Neb. 347, 70 N.W.2d 102; Field v. Vinograd, 10 Wis.2d 500, 103 N.W.2d 671; Long v. Gilchrist, 251 Iowa 1294, 105 N.W.2d 82; Anno., 48 A.L.R.2d 971.

The law presumes that the jury was composed of fair-minded persons and that their verdict expressed their honest judgment. We apply that presumption to the verdict in this case. Kern v. Art Schimkat Const. Co., N.D., 125 N.W.2d 149.

We determine, therefore, that the affidavits of all of the jurors, identical in form, cannot be used or considered by the court to impeach their verdict or as a ground for a new trial.

We now turn to appellants' claim that the verdict is contrary to law. Counsel have failed to specify what principle or rule of law the verdict violates.

The law relating to actions for the recovery of damages for wrongful death occasioned by gross negligence is well-settled in this State. Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897; Dahl v. North Am. Creameries, N.D., 61 N.W.2d 916; Quam v. Wengert, N.D., 86 N.W.2d 741; Henke v. Peyerl, supra.

A repetition herein of the principles of law established by these decisions would serve no useful purpose. It is sufficient to say that appellants have not challenged their validity or applicability to the facts established in this case. We therefore apply them and determine that they are decisive of the legality of the verdict against Curtis Werre.

Furthermore, the verdict against William J. Werre is not contrary to law. The record shows without dispute that he kept and maintained the automobile involved for the business and pleasure of his family. The family purpose doctrine is therefore applicable.

Under this doctrine, one who maintains an automobile for the pleasure and convenience of himself and of his family, is liable for damages occasioned by the negligent operation thereof, while it was being used by a member of his family for said purposes. Vannett v. Cole, 41 N.D. 260, 170 N.W. 663; Ulman v. Lindeman, 44 N.D. 36, 176 N.W. 25, 10 A.L.R. 1440; Bryan v. Schatz, 77 N.D. 9, 39 N.W.2d 435.

We conclude, therefore, that this assignment of error is without merit.

We come now to appellants' specification that the trial court erred in denying appellants' motion for judgment notwithstanding the verdict.

It is a well-settled principle of law in this State that a motion for judgment notwithstanding the verdict should

not be granted where the moving party is not entitled to a judgment on the merits as a matter of law. Westerso v. City of Williston, 77 N.D. 251, 42 N.W.2d 429; Stormon v. Weiss, N.D., 65 N.W.2d 475; Olson v. Cass Co. Elec. Coop., N.D., 94 N.W.2d 506.

We have held that the evidence is sufficient to sustain a verdict of the jury on the questions of gross negligence and proximate cause and that the verdict of the jury is not contrary to law. Therefore the defendants were not entitled to judgment on the merits as a matter of right and hence the trial court did not err in denying said motion.

Finally, appellants argue that the trial court committed prejudicial error in denying their motion for a new trial.

We have consistently held that a motion for a new trial based upon the insufficiency of the evidence is addressed to the sound judicial discretion of the trial court, and unless an abuse of that discretion is clearly established, the action of the trial court will not be disturbed upon appeal. Robbins v. Robbins, N.D., 70 N.W.2d 37; Hauff v. Keyes, N.D., 83 N.W.2d 414; Kuntz v. McQuade, N.D., 95 N.W.2d 430; Stokes v. Dailey, N.D., 97 N.W.2d 676; Kern v. Art Schimkat Const. Co., N.D., 125 N.W.2d 149.

We have carefully considered all of appellants' specifications of the insufficiency of the evidence and of errors of law and have determined that the evidence is sufficient to sustain the verdict of the jury; and that the trial court did not commit any prejudicial error in the admission or exclusion of evidence or in its instructions to the jury; that the appellants have had a fair trial; and hence this case should not be reopened for retrial where, as here, justice does not so require. Sullwold v. Hager, N.D., 110 N.W.2d 457; Benzmiller v. Swanson, N.D., 117 N.W.2d 281.

Therefore we conclude that the trial court did not commit any prejudicial error in the trial of the action and did not abuse its judicial discretion in denying appellants' motion for a new trial.

The judgment and order of the district court are therefore affirmed.

KELSCH, D. J., and ERICKSTAD, TEIGEN and BURKE, JJ., and MORRIS, C. J., concur.

Justice Strutz deeming himself disqualified did not participate, Honorable C. F. Kelsch, District Judge, sitting in his stead.